**In re FOUR SEASONS SECURITIES
LAWS LITIGATION.**

*Loren Schweninger v. Walston & Co., Inc.,
et al.* (No. 70 C 3107, N.D.Ill.,
Eastern Division)

*Florence Hamilton v. Walston & Co.,
Inc., et al.* (No. 72–1948, C.D.Cal.)

**No. 55.**

United States District Court,
W. D. Oklahoma.

May 23, 1974.

---

Richard Orlikoff, Orlikoff & Tierney, Chicago, Ill., for Schweninger.

Kenneth J. Murphy, Jr., Albertini, Murphy & Gill, Los Angeles, Cal., for Hamilton.

Arthur F. Mathews, Michael R. Klein, Stephen B. Presser, Wilmer, Cutler & Pickering, Washington, D. C., for Clark.

William G. Paul, Harry A. Woods, Jr., Crowe, Dunlevy, Thweatt, Swinford, Johnson & Burdick, Oklahoma City, Okl., for Arthur Andersen & Co.

Thomas W. Kelly, Richard W. Lyon, Breed, Abbott & Morgan, New York City, for Miller.

Thomas J. Kenan, George, Kenan, Robertson & Lindsey, Oklahoma City, Okl., for Bankers Life.

## OPINION NO. 7

THOMSEN,[*] District Judge.

These cases present questions with respect to the service of process in actions which have been transferred to this district by the Judicial Panel on Multidistrict Litigation (the Panel) under 28 U. S.C. § 1407 for coordinated or consolidated pretrial proceedings. The Schweninger case also involves the filing of an amended complaint adding new parties defendant.

### Facts

For a history of the Four Seasons companies and of these M.D.L. 55 proceedings through November 1972, see Opinion No. 2 herein, 58 F.R.D. 19 (1972).

### Schweninger Case

Schweninger filed his original complaint in the Northern District of Illinois on December 11, 1970, naming as defendants Walston & Co., Inc. (Walston), Vardon and McCollum, charging them: in Count I with violations of the Securities Act of 1933 and the Securities and Exchange Act of 1934 in connection with purchases of Four Seasons stock by him in July and November 1968 and January 1969, and in urging him not to sell his Four Seasons stock in January and February 1970; and in Count II with violations of those statutes in connection with the purchase of shares of other companies. He seeks

damages and other relief. The Panel declined at first to transfer the Schweninger case to this district under § 1407, see 331 F.Supp. 559 (Aug. 25, 1971), but later did transfer it, see 344 F.Supp. 1404 (July 13, 1972).

### Hamilton Case

Hamilton filed her complaint in the Central District of California on August 23, 1972, against sixteen named defendants and "Does One through Fifty", charging defendants with violations of the Securities Act of 1933, violation of the Securities Exchange Act of 1934 and fraud, in connection with her purchase of Four Seasons stock on February 3, 1970. She seeks actual damages plus interest, punitive damages and rescission against various defendants. Some of the defendants were served with process, but some, including Clark and Bankers Life Insurance Company of Nebraska, were not, before the case was transferred to this court under § 1407 on November 2, 1972.

### Both Cases

Meanwhile, on May 26, 1971, the Panel entered its first order transferring nine cases to this court under § 1407. In re Four Seasons Securities Laws Litigation, Jud.Pan.Mult.Lit., 328 F.Supp. 221. On May 28, 1971, this court signed its first M.D.L. 55 pretrial order to govern practice and procedure in the nine cases transferred by the Panel, the one case then pending in this court, and any other related actions subsequently filed in or transferred to this court. The first pretrial conference was held on July 20, 1971, and resulted in Pretrial Order No. 2, dated July 30, 1971, which provided, inter alia:

"D. All discovery or other pretrial proceedings in this Court shall be stayed in this cause subject to further Order of the Court, except as hereinafter provided in this Order."[1]

---

* Of the District of Maryland, sitting by designation.

1. All parties understood that those provisions were intended to prevent, until further order

The proceedings between July 1971 and September 1972 are adequately summarized in Opinion No. 2, 58 F.R.D. at 29–31.

Both Schweninger and Hamilton duly requested to be excluded from the classes and, therefore, did not share in and are not bound by the terms of the settlement. Their cases, however, remained in M.D.L. 55.

On January 31, 1973, this court entered another order to govern the practice and procedure in open cases in M.D.L. 55, including the Schweninger and Hamilton cases. Counsel for Schweninger and counsel for Hamilton attended a pretrial conference held on February 26, 1973, which resulted in an order dated March 23, 1973, which provided, inter alia:

"1. All pretrial orders heretofore entered on M.D.L. Docket No. 55 remain effective in all actions currently pending or which may hereafter become pending on M.D.L. Docket No. 55."

During the balance of the year 1973 discovery and other proceedings in the few remaining opt-out cases were delayed by the proceedings in connection with the indictment of several of the defendants in one or more of the M.D.L. 55 cases,[2] and by the proceedings in connection with the claim of the State of Ohio.[3] The proceedings under Chapter XI of the Bankruptcy Act filed by Walston[4] in the Southern District of New York and the stay order entered therein on March 26, 1974, have also complicated the M.D.L. 55 proceedings.

Some of the opt-out cases were settled, but counsel in other cases wished to proceed. On October 31, 1973, this court wrote to all counsel in the open cases asking them to advise the court and other counsel what further discovery they would need, and what objections they might have to the discovery sought by other counsel.

On January 18, 1974, the court wrote to all counsel, stating, inter alia, that: a scheduling conference would be held on February 8, 1974; before that date all parties should complete service on any parties they had sued but had not served; and each party who wished to file any amended pleading, including an amended complaint, should prepare, file, serve and send the court a copy on or before February 7.

Before or at the conference on February 8, counsel for several parties indicated that the date set for completion of certain pretrial proceedings could not reasonably be met.[5] Accordingly, the court's letter of January 18 was modified by an order dated February 14, which provided, in pertinent part, that:

"1. All parties complete service of process upon any parties they have

of the court, service of process upon named defendants who had not theretofore been served as well as amendments adding additional defendants.

2. The criminal trial of three defendants connected with Arthur Andersen & Company was held during November and December 1973 and January and February 1974. Two were acquitted and the jury disagreed as to the third. It is not yet certain whether he will be retried.

3. See Opinion No. 4 herein, 59 F.R.D. 667 (1973), and Opinion No. 6 herein, 370 F. Supp. 219 (1974). An appeal from Opinion No. 4 is pending in the Court of Appeals for the Tenth Circuit. A related case in a state court of Ohio has been argued. The decisions in those cases are likely to affect the future course of the M.D.L. 55 proceedings, including the volume of discovery and other pretrial proceedings. See note 6, below.

4. Under its new corporate title, duPont Walston, Inc.

5. On January 31, Schweninger, Hamilton and another opt-out (Kaufman) wrote the court, with copies to all counsel, stating: "The present addresses of most of the defendants are not known to plaintiff's counsel; therefore personal service of summons, responsive pleadings and depositions will necessarily be delayed unless those defendants who have made appearances are willing to accept service through their counsel."

sued but not served on or before March 15, 1974.[6]

"3. Any party intending to file any amended or additional pleading, including but not limited to an amended complaint, * * * file and serve such amended pleading and complete service of process on all parties therein named on or before March 15, 1974. * * *

"7. All pretrial orders heretofore entered in M.D.L. Docket No. 55 and not countermanded by this order remain effective in all actions which are currently pending or which may hereafter become pending on M.D.L. Docket No. 55."

### Schweninger Case

On February 6, 1974, the attorney for Schweninger, wrote the court a letter explaining why he could not attend the February 8 conference and stating:

" * * * I further regret that we have not yet been able to complete service of process on various parties whom we wish to add as party defendants in the Schweninger litigation. I join with Mr. Rose, attorney for plaintiff, Richard L. Kaufmann, in requesting an extension of time in which amended pleadings may be filed and service may be effected. I request specifically an extension of thirty (30) days to file such an amended pleading." [7]

As noted above, this court in its order of February 14 extended the time for filing and serving amended complaints and for serving all parties named therein until March 15. On March 15, the attorney for Schweninger wrote me as follows:

"I attempted today to file in the District Court for the Northern District of Illinois, Eastern Division, an amendment to the *Schweninger* complaint. I discovered that the Clerk would not take the amendment nor would he issue summons in view of the transfer and consolidation of the case.

"I enclose two copies of the amended complaint and I request that it be filed with the Clerk in the Four Seasons consolidated cases. I also enclose two copies each of Summons for the defendants added in the Amended Complaint, and I request that the Clerk of the Court issue each summons and copy.

"I enclose, also, a direction for service of summons by the U. S. Marshall. If the Marshall will advise me of the amount of the necessary service fees, I will promptly remit.

"I realize the Amended Complaint and the summons will arrive at the Court 'out of time'. I simply plead that the procedures for amending the Complaint and issuing summons were unfamiliar to me. I don't believe any party will suffer prejudice by the few additional days taken to file the amended complaint, especially since I am mailing copies of the amended complaint and the original complaint to attorneys for each of the additional defendants.

"I therefore respectfully request that the Court permit the Amended

---

6. The date of March 15, 1974, was fixed because counsel for plaintiffs in some of the opt-out cases were anxious to complete their discovery by taking depositions of a few witnesses, and to have their cases remanded to the transferor district for trial. The problem was complicated by the fact that some of the proposed deponents had been defendants or witnesses or potential witnesses in the criminal case in New York and later in this court, where the trial was not completed until early February 1974. The State of Ohio had indicated that it might seek to take over 100 depositions, more than half of whom were potential witnesses in the criminal case.

7. Pursuant to the order of March 23, 1973, counsel for Schweninger had indicated that he intended to name and serve five additional defendants, including Arthur Andersen & Company, Jack L. Clark and Glenn Miller.

Complaint to be filed and summons to issue to the additional defendants."

There is no dispute with respect to the historical facts stated in that letter; the dispute involves their legal effect.

The amended complaint added as defendants Jack L. Clark, Arthur Andersen & Company and Glenn Miller. The "attorneys for each of the additional defendants" to whom Schweninger's attorney sent copies of the letter of March 15, together with copies of the amended complaint and of the original complaint, were the attorneys who had entered their appearance for the respective "additional defendants" in other M.D.L. 55 cases.[8]

The letter and papers sent to me were received on Monday, March 18, and were forwarded to the clerk of this court on the same day with the following instructions:

"Enclosed find amended complaint in the above entitled matter, which was sent to me rather than to you. You should file the complaint and issue the summonses, without prejudice to the rights of the newly named defendants to file any motions or other papers they may deem appropriate."

Copies of that letter were sent to counsel for Schweninger, Clark, Miller and Arthur Andersen & Company.

The filing of (1) the letter from Schweninger's attorney, (2) the court's letter, and (3) the amended complaint were entered on the docket on March 21, 1974. On the same day the clerk issued summonses for the newly added defendants and delivered them to the marshal. Clark and Arthur Andersen & Company were served with process promptly thereafter.[9] Miller has not yet been served, although service was attempted on six occasions between April 1 and 14, 1974.

Motions under Rule 41(b), F.R.Civ.P., have been filed on behalf of (1) Clark and (2) Arthur Andersen & Company to dismiss Schweninger's amended complaint against each of them for failure to comply with the order of court of February 14, 1974, requiring service of process on or before March 15, 1974.[10]

### Hamilton Case

On January 22, 1974, Hamilton's attorney wrote the clerk of this court, requesting that summonses be issued against several defendants who had not

---

8. On June 22, 1971, pursuant to the May 28, 1971 order of this court, Jack L. Clark, by his attorneys, Wilmer, Cutler & Pickering, sent to the clerk a memorandum with copies to the court and all counsel then in the case, which stated, inter alia:

"1. Service of process upon Jack L. Clark ('CLARK') in this proceeding may be accomplished by serving:

Arthur F. Mathews
Wilmer, Cutler & Pickering
900 17th Street, N.W.
Washington, D.C. 20006
Telephone (202) 296–8800"

Accompanying the memorandum was a "Notice of Appearance on Behalf of Jack L. Clark", which listed several counsel for Clark and stated: "Of these counsel, Mr. Arthur F. Mathews has been designated as counsel for service of process in accordance with the order of this Court of May 28, 1971."

Assuming that the June 22, 1971 "Notice of Appearance on Behalf of Clark" meant that he was consenting that service of a

summons and an amended complaint in a case in which he had not theretofore been a party might be made on his attorney Mathews, such consent was withdrawn by a letter of March 5, 1973, sent by the attorneys for Clark to the court and all counsel. Moreover, no summons was ever served on Mathews in either the Schweninger or Hamilton cases.

9. On March 23 and April 1, 1974, respectively, by marshals in the appropriated districts.

10. Counsel for Glenn Miller in the M.D.L. 55 proceedings has written the court a letter, with copies to counsel for Schweninger and other counsel, (1) replying to the March 15 letter of counsel for Schweninger, (2) requesting the court not to permit the amended complaint to be filed as to Miller or summons to issue as to him, and (3) stating "neither our participation in the M.D.L. 55 proceedings nor this letter constitutes an entry of appearance for Mr. Miller in the Schweninger action".

been served while the Hamilton case was pending in the Central District of California. The clerk replied on February 4, sending the attorney the praecipes necessary for the issuance of the requested summonses. On February 7 the attorney joined with counsel for other plaintiffs in requesting the court to extend the time for service of process to March 15, because plaintiffs did not have the addresses of the various defendants. On receiving the court's order of February 14 extending the time to March 15, Hamilton's attorney filed a praecipe for summons on Clark, showing his address as "unknown". By inadvertence, the attorney sent no praecipe for a summons against Bankers Life.

On March 7 the attorney learned the address of Clark and on March 8 sent the clerk (1) a praecipe giving Clark's address as "Care of Federal Prison Camp, Safford, Arizona 85466" and a praecipe requesting the issuance of a summons to Bankers Life, to be served on the Commissioner of Insurance. What the attorney believed to be the proper fees were computed and sent with his letter. The marshal in Oklahoma City replied that the amount sent was short $4.72. That sum was immediately dispatched to the marshal on March 14. Bankers Life was served on March 19, Clark on March 23.

Clark and Bankers Life have filed motions under Rule 41(b), F.R.Civ.P., to dismiss the Hamilton action as to them because they were not served with process on or before March 15, in conformity with the court's order of February 14, 1974.

### Discussion—Both Cases

Rule 41(b), F.R.Civ.P., provides in pertinent part:

"For failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against him. * * * Unless the court in its order

for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits."

The principles which should guide a judge in applying this rule were stated by the Tenth Circuit in Meeker v. Rizley, 324 F.2d 269 (1963):

"As a general proposition, the trial court has the inherent power to dismiss a plaintiff's action for failure to prosecute or to comply with the rules of federal procedure or any order of the court. Rule 41(b) Fed.R.Civ. Proc.; Link v. Wabash R. Co., 370 U. S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734, reh. denied 371 U.S. 873, 83 S.Ct. 115, 9 L.Ed.2d 112. The exercise of this power is discretionary, and such discretion will be sustained in the absence of abuse. Sweeney v. Anderson, 10 Cir., 129 F.2d 756; Shotkin v. Westinghouse Electric Mfg. Co., 10 Cir., 169 F.2d 825. * * * The laws favors the disposition of litigation on its merits. Davis v. Parkhill-Goodloe Co., 5 Cir., 302 F.2d 489; Moore's Federal Practice, Vol. 6, § 55.10(1), p. 1829. Dismissal is a harsh sanction and should be resorted to only in extreme cases. Syracuse Broadcasting Corp. v. Newhouse, 2 Cir., 271 F.2d 910." 324 F.2d at 271, 272.

Cf. Food Basket, Inc. v. Albertson's, Inc., 416 F.2d 937 (10 Cir. 1969); SEC v. Power Resources Corp., 495 F.2d 297 (10 Cir. 1974).

Like the plaintiff in *Meeker*, Schweninger and Hamilton have not been dilatory in prosecuting the case or inclined to deliberately disobey any order of the court for purposes of delay. The time allowed for filing an amended complaint and for the service of process must be viewed in the context of a multidistrict action. (1) Each of their actions was

filed in the appropriate district; (2) limitations had been tolled by the filing in 1970 of the class actions against Clark, Arthur Andersen & Company, Miller, Bankers Life and many other defendants, see American Pipe & Construction Co. v. Utah, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713, 42 U.S.L.W. 4155 (1974); (3) their cases had been transferred to this court by the Panel not at their request, but at the request of one or more of the defendants; and (4) by the order of March 23, 1973, this court had stayed all pretrial proceedings in all remaining M.D.L. 55 cases, including the Schweninger and Hamilton cases, beyond the confirmation of the settlement of the class actions;[11] that was done, among other reasons, because of the pendency of the criminal proceedings against Clark, Arthur Andersen personnel and others.

### Discussion—Schweninger

No authority has been cited or found which has considered where a plaintiff should file an amended complaint in a tag-along case which has been transferred by the Panel under § 1407. Neither any rule of the Panel nor any provisions of the Manual for Complex and Multidistrict Litigation specifically answers the question.[12] However, the decisions of the Panel and of transferee courts in a number of cases make clear what the answer should be.

"In substance a transfer under Section 1404(a) is a 'change of venue' (that is a 'change of courtrooms') for completion of pretrial and for trial or other disposition. * * * By analogy a transfer under Section 1407 is a change of venue for pretrial purposes.

"On change of venue the overwhelming authority holds that the jurisdiction and powers of the transferee court are coextensive with that of the transferor court; that the transferee court may make any order to render any judgment that might have been rendered by the transferor court in the absence of transfer. * * * that after an order changing venue the jurisdiction of the transferor court ceases; and that thereafter the transferor court can issue no further orders, and any steps taken by it are of no effect. * * * These principles are applicable to a transfer under Section 1407 from the time of entry of the order of transfer until the time of entry of an order of remand." (citations omitted) In re

---

11. The March 23, 1973 order continued in effect the order of July 30, 1971. See note 1. above. Pretrial proceedings include, inter alia, discovery, the amendment of pleadings and the service of process. Maricopa County v. American Petrofina, Inc., 322 F.Supp. 467, 469 (N.D.Cal.1971); In re Plumbing Fixture Cases, 298 F.Supp. 484 (J.P.M.L. 1968).

12. Proposed "Suggested Procedures for Multidistrict Litigation" now under consideration by the Panel and said to have been utilized successfully by many of the transferee courts include:

"V. C. Distribution of Order and Notice.
" * * * *

"3. To Attorneys. As soon as practical, the clerk of the transferee court should send a letter to all counsel whose names appear on the Panel Service List. The letter should include the following:
" * * * *

"(vi) Notice that, subsequent to transfer, all papers must be filed in the transferee court."

"V. II. Service of Process. After transfer, service of process, including third-party process, sought within the transferee district may be initiated by delivery of the process to the Marshal of the transferee district. If service sought to be effected is in the transferor district, the transferee clerk should forward the process to the Marshal of the transferee district for transmission and service of the process in the transferor district."

"VI. C. Papers Tendered for Filing after Transfer. All papers submitted for filing in the transferor court after the order of transfer has been filed in the transferee court should be rejected with the exception of returned summonses which should be filed, docketed and forwarded to the transferee court."

Plumbing Fixture Cases, 298 F.Supp. 484, 495, 496 (J.P.M.L.1968).

See also In re Aircrash near Duarte, California, 357 F.Supp. 1013, 1015 (C. D.Cal.1973).

■■ This court concludes that the applicable law requires that when a case has been transferred by the Panel, an amended complaint, whether or not it adds a new party, should be filed with the clerk of the transferee court and not with the clerk of the transferor court.[13] Therefore, the attempted filing of Schweninger's amended complaint in the transferor court on March 15, 1974, was not a timely filing. Nor did the mailing of the amended complaint to the transferee judge, with a request that it be filed with the clerk, amount to a filing on the date of the mailing.

■■ The mailing on March 15, of copies of the complaint and amended complaint to counsel representing the newly added defendants in other M.D.L. 55 cases was not proper service of process on those defendants. Rule 4, F.R.Civ.P. Moreover, where a defendant has not been served with process in a case before it is transferred under § 1407, service on counsel who are representing that defendant in other cases in the multidistrict proceeding is not sufficient service of process on him unless his attorney is authorized by appointment or by law to receive service of process. Rule 4(d), F.R.Civ.P.; Schultz v. Schultz, 436 F.2d 635, 637 (7 Cir. 1971); Ransom v. Brennan, 437 F.2d 513, 518 (5 Cir. 1971); Schwarz v. Thomas, 98 U.S. App.D.C. 365, 222 F.2d 305 (1955).

■ Process was served on Clark and Arthur Andersen & Company on or before April 1, 1974. On March 15, 1974, counsel for Schweninger had mailed to counsel who were representing the new defendants (1) copies of the complaint and amended complaint, and (2) copies of his letter to the court. The court finds that Clark and Arthur Andersen & Company have shown no prejudice from the delay in filing the amended complaint and serving process on them.

### Conclusion—Schweninger

Under all the circumstances, the court should exercise its discretion to hold that the neglect of counsel for Schweninger to file the amended complaint and serve process on the newly added defendants was not intended to delay the proceedings and should be considered excusable.

Miller has not yet been served and whatever points he may wish to make are not presently before the court.

### Discussion—Hamilton

The complaint which Hamilton filed in the Central District of California on August 23, 1972, included Clark and Bankers Life among the sixteen named defendants. Neither was served with process before the case was transferred to this court by the Panel. The attorney for Hamilton followed the correct path in serving Clark and Bankers Life through the clerk and marshal of the transferee court;[14] but because of several inadvertences he did not succeed in effecting service until four days after March 15 in the case of Bankers Life and nine days in the case of Clark. The court finds that Clark and Bankers Life have shown no prejudice from the delay in serving process on them.

### Conclusion—Hamilton

The court concludes that it should exercise its discretion to hold that the ne-

13. The first pretrial order entered herein provided, inter alia: "4. A signed original of any paper which is to be filed in any of these actions shall be filed with the Clerk of this Court (not with the transferor court) and a copy of each paper filed shall be sent to Judge Roszel C. Thomsen, United States District Court, District of Maryland, Baltimore, Maryland." The order of January 31, 1973, contained a similar provision.

14. In re Library Editions of Children's Books, 299 F.Supp. 1139, 1142 (J.P.M.L. 1969); Maricopa County v. American Petrofina, Inc., 322 F.Supp. 467, 469 (N.D.Cal. 1971).

glect of counsel for Hamilton to serve process on Clark and Bankers Life was not intended to delay the proceedings and should be considered excusable.

*Ruling*

Defendants' motions under Rule 41(b) are hereby denied.