**In re SKI TRAIN FIRE IN KAPRUN, AUSTRIA ON NOVEMBER 11, 2000**

**This Document Relates To: Defendants Waagner–Biro Binder AG, Waagner–Biro Binder Beteilingungs AG, WB Holding AG, Binder + Co AG**

01 Civ. 10776.

United States District Court, S.D. New York.

April 21, 2003.

Edward D. Fagan, Fagan & Associates, Livingston, NJ, Robert A. Swift, Hilary Cohen, Kohn, Swift & Graf, PC, Philadelphia, PA, Jay J. Rice, Randee Matloff, Nagel, Rice, Dreifuss & Mazie, LLP, Livingston, NJ, for Plaintiffs.

Frederick W. Reif, Debra Tama, Riker Danzig Scherer Hyland Perretti LLP, New York, NY, for Defendants.

### OPINION AND ORDER

SCHEINDLIN, District Judge.

Plaintiffs, the parents and grandparents of six Americans who died in a ski train fire on November 11, 2000, in Kaprun, Austria, brought several individual actions against numerous defendant train and train part manufacturers, ski resort operators, and marketing companies alleging negligence and strict liability. The Judicial Panel on Multidistrict Litigation ("MDL Panel") consolidated these suits for

pretrial purposes before this Court. To date, nine defendants have moved to dismiss on various grounds.[1] An additional four defendants—Waagner-Biro Binder AG in Abwicklung (as successor in interest to Waagner–Biro Binder Aktiengesellschaft and Waagner–Biro AG) (collectively, "WBB"), Waagner–Biro Binder Beterilingungs AG ("WBBB"), WB Holding AG ("WBH") and Binder + Co AG ("Binder") (collectively, "the Waagner defendants") now move to dismiss on many of the same grounds: lack of subject matter jurisdiction, lack of standing, lack of personal jurisdiction, failure to state a cause of action, and forum non conveniens. For the reasons set forth below, the Waagner defendants' motion to dismiss is denied on all grounds except lack of personal jurisdiction, for which I find that transfer—rather than dismissal—is warranted.[2]

## I. BACKGROUND

### A. The Moving Defendants

WBB is an Austrian corporation located in Linz, Austria with administrative headquarters in Vienna, Austria. *See* 10/02 Declaration of Dr. Christoph Nemeth, Director of the Legal Department of WBB ("Nemeth Dec."), Ex. G to 11/01/02 Declaration of Frederick W. Reif, counsel for Waagner defendants ("Reif Dec."), ¶ 3. Until 1999, WBB was active in the fields of structural steel fabrication and the manufacturing of machinery. *See id.* Plaintiffs allege that WBB designed, engineered, and manufactured major parts of the ski train at issue in this litigation.[3] *See* Plaintiffs' First Amended Waagner Complaint as to Waagner Defendants ("Waagner Compl."), Ex. 1 to 11/25/02 Declaration of Hilary Cohen, counsel for plaintiffs ("Cohen Dec."), ¶ 13.

WBBB is an Austrian corporation located in Vienna, Austria. *See* 10/24/02 Declaration of Magistrate Helmut Wurzinger, member of the Executive Board of WBBB ("Wurzinger Dec."), Ex. I to Reif Dec., ¶ 1. Founded on June 30, 2001, WBBB is a holding company that acquires majority interests in other companies; it conducts no active operations of any kind.[4] *See id.* ¶ 3.

WBH is also an Austrian holding company located in Vienna, Austria. *See* 10/28/02 Declaration of Magistrate Martin

---

**1.** This Court denied the motions of Siemens AG, Bosch Rexroth Aktiengesellschaft ("Bosch Rexroth AG"), Bosch Rexroth Corporation ("BRC"), and Gletscherbahnen Kaprun AG ("GBK") and granted the motions of Siemens AG Oesterreich ("Siemens Austria"), Oesterreichsche Elektrizitaetswirtschaft AG ("OE AG"), Thyssen–Schachtbau, G.m.b.H. ("Thyssen"), Beton-und Monierbau, G.m.b.H. ("Beton"), and Verbund–Austrian Hydro Power AG ("AHP").

**2.** Because this Court lacks personal jurisdiction over the moving defendants, I do not address the doctrine of forum non conveniens. *See* 15 Charles A. Wright, Arthur R. Miller and Edward A. Cooper, *Federal Practice and Procedure Jurisdiction and Related Matters* § 3828 (2d ed.2003) (stating that "[t]he doctrine of forum non conveniens "does not come into play unless the court in which the action was brought has both subject matter and personal jurisdiction and is a proper venue." ") (citing *Patrickson v. Dole Food Co.,* 251 F.3d 795, 801 n. 3 (9th Cir. 2001)).

**3.** The Waagner defendants admit that Waagner Biro AG ("WBAG"), the predecessor of WBB, entered into a contract with GBK for the delivery of certain mechanical parts for a cable railway that was being built in Kaprun, Austria. *See* Nemeth Dec. ¶ 4. The contracted work was concluded in 1974. *See id.*

**4.** Plaintiffs allege that WBBB owns 100% of WBB and WBH. *See* Plaintiffs' Brief in Opposition to Waagner Defendants' Motion to Dismiss ("Pl.Mem.") at 14 (citing Extract from the 2001 Annual Report of WBH, Ex. 14 to Cohen Dec.) The Waagner defendants admit only that WBBB owns 100% of WBB. *See* Wurzinger Dec. ¶ 5.

Mayerhoffer, Corporate Comptroller of WBH ("Mayerhoffer Dec."), Ex. H to Reif Dec., ¶¶ 1, 3. Although WBH's primary business is the ownership of majority interests in other companies, it also provides consulting services to its subsidiary companies. *See id.* ¶ 3.

Binder is an Austrian corporation located in Gleisdorf, Austria. *See* 10/26/02 Declaration of Magistrate Joerg Rosegger, Head of Sales and Marketing for Binder ("Rosegger Dec."), Ex. J to Reif Dec., ¶ 1. Binder was founded on September 28, 1999, and is in the business of developing and manufacturing environmental, reprocessing, and packaging technology. *See id.* ¶ 5. Binder is a 99.997% owned subsidiary of WBH. *See id.* ¶ 6.

**B. Procedural History**

In January 2001, WBB was named as a defendant in three lawsuits brought in the Southern District of New York regarding the November 20, 2000 ski train accident in Kaprun, Austria.[5] *See* Reif Dec. ¶ 3. WBB moved to dismiss these New York Actions based on improper service, forum non conveniens, and lack of personal jurisdiction. *See id.* ¶ 4. Shortly thereafter, plaintiffs voluntarily discontinued the New York Actions against WBB without prejudice. *See id.*

On or about June 27, 2001, plaintiffs filed a new complaint against WBB captioned *Habblett et al. v. Waagner–Biro AG et al.,* No. 01 Civ. 5815, in the United States District Court for the Central District of California (the "California Action"). *See* Complaint in the California Action, Ex. A to Reif Dec. The California Court never issued a summons in this matter. *See* Civil Docket Sheet for California Action ("Dkt. Sheet"), Ex. B to Reif Dec.[6]

On or about July 6, 2001, plaintiffs filed a motion with the MDL Panel seeking transfer of the California Action to this Court. *See* Reif Dec. ¶ 6. On November 19, 2001, the action was transferred. *See* MDL Panel's Transfer Order, Ex. C to Reif Dec. On or about December 21, 2001, plaintiffs filed a Consolidated and Amended Complaint ("Amended Complaint") against WBB and other defendants.

Plaintiffs attempted to serve WBB pursuant to letters rogatory but were unsuccessful. This Court thereafter authorized service on WBB and other Austrian entities by ordinary mail pursuant to Fed. R.Civ.P. 4(f). *See* Reif Dec. ¶ 9. On August 30, 2001, plaintiffs mailed to defendants a copy of a Summons issued by the United States District Court for the Southern District of New York. *See* 11/30/01 Summons, Ex. D to Reif Dec.

With this Court's permission, plaintiffs further amended the Amended Complaint to name three additional Waagner entities as defendants. *See* Reif Dec. ¶ 10. Plaintiffs mailed a copy of the Waagner Complaint and an Amended Summons, *see* Ex. E to Reif Dec., to two of those entities. Although named in the Waagner Complaint, Binder never received a copy of the Amended Summons or Waagner Complaint. *See* Reif Dec. ¶ 10; Rosegger Dec. ¶ 21.

**II. CHOICE OF LAW**

■ The parties disagree on which state's law applies to the issues presented

---

**5.** These lawsuits were captioned as follows: *Habblett et al. v. Leitner Lifts USA, Inc.,* 01 Civ. 266 (S.D.N.Y.); *Baker et al. v. Leitner Lifts USA, Inc.,* 01 Civ. 817 (S.D.N.Y.); *Kern et al. v. Leitner Lifts USA, Inc.,* 01 Civ. 264 (S.D.N.Y.) (collectively, "New York Actions").

**6.** The California Court ordered plaintiffs to show cause by January 15, 2002, as to why the case should not be dismissed for failure to prosecute. *See* Dkt. Sheet. However, the action was transferred to this Court before plaintiffs had an opportunity to respond to the order to show cause.

in this motion. The Waagner defendants argue that New York law applies, while plaintiffs assume that California law governs.

■ A district court sitting in diversity applies the law of the forum state. *See In re Ski Train Fire in Kaprun, Austria on November 11, 2000 (Bosch Rexroth)*, 230 F.Supp.2d 392, 400 (S.D.N.Y.2002) (*"Kaprun Bosch Rexroth"*) (citing *On Air Entm't Corp. v. National Indem. Co.*, 210 F.3d 146, 149 (3d Cir.2000)); *In re Sterling Foster & Co., Inc. Sec. Litig.*, 222 F.Supp.2d 289, 300 (E.D.N.Y.2002) (citing *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir.1997)). In an MDL proceeding, "the forum state ... is the district court where the action was originally filed, and therefore that state's law must be applied." *Kaprun Bosch Rexroth*, 230 F.Supp.2d at 400; *see also Sterling Foster*, 222 F.Supp.2d at 300 ("In a multi-district litigation, the transferee court must apply the law of the transferor forum in determining issues of personal jurisdiction.") (citing *Van Dusen v. Barrack*, 376 U.S. 612, 639–40, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964)); *In re MTBE Litig.*, 175 F.Supp.2d 593, 606 n. 20 (S.D.N.Y.2001) ("When considering questions of state law the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation."). Because this action was originally filed in the Central District of California, the Court looks to California law.

The Waagner defendants argue that this "well-established rule" does not apply here because the case was transferred to this Court before a summons was issued and therefore before the California court had jurisdiction over WBB. Memorandum of Law of Waagner Defendants in Support of Motion to Dismiss ("Waagner Mem.") at 3 (noting that Fed.R.Civ.P. 4 requires that a summons be issued for a court to obtain personal jurisdiction over a defendant). Defendants additionally argue that, because three of the Waagner defendants were first named in a complaint filed in the Southern District of New York, "plaintiffs have apparently abandoned the California action and this Court must apply New York law to the issues presented in this motion." *Id.* There is no support whatsoever for defendants' theory that amendments to add parties and the issuance of summonses after transfer by the MDL Panel affect the choice of law to be applied.

The California court is clearly the transferor court here even though a summons was never issued. The MDL permits the transfer of "pending" actions. *See* 28 U.S.C. § 1407 (1982) ("When civil actions involving one or more common questions of fact are *pending* in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings.") (emphasis added). The fact that WBB may have had a colorable argument for dismissal on the basis of insufficiency of process has no bearing on whether the case was "pending" in California prior to transfer. Moreover, the issue of the court's jurisdiction need not be resolved prior to transfer.[7] *See In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 163 (2d Cir.1987) ("Transfers under Section 1407 are simply not encumbered by considerations of in personam jurisdiction and venue ....") (internal quotation marks and citations omitted); *see also Maricopa County v. American Petrofina, Inc.*, 322 F.Supp. 467, 469 (N.D.Cal.1971) (acknowledging that the multidistrict panel does not have to await a complete designation of parties or service upon them before transferring an action). Thus, whether or not a summons was issued prior to trans-

7. If defendants' argument were true, then no case for which a defendant could ultimately challenge the court's jurisdiction could be transferred through the MDL process.

fer is irrelevant to the choice-of-law analysis.

Likewise, the fact that the Complaint in this action was amended to name additional defendants after the case was transferred by the MDL Panel does not affect the choice of law to be applied. This Court has already decided, with respect to the Bosch defendants, that the law of the transferor court applies even where the complaint was amended and served on additional parties *after* the case was transferred. *See Kaprun Bosch Rexroth*, 230 F.Supp.2d at 396–97, 399 (applying Pennsylvania law even though the case was governed by the amended complaint filed in the MDL proceeding in the Southern District of New York—not the original complaint filed in the Eastern District of Pennsylvania). Moreover, a substantial body of case law requires that once transfer is effectuated, parties may only be added and served in the transferee forum. *See, e.g., In re Four Seasons Sec. Laws Litig.*, 63 F.R.D. 115, 122 (D.Okla.1974) (recognizing that once a case has been transferred by the MDL Panel, any amendments to the complaint, which may or may not add a new party, must be filed with the transferee court); *In re Equity Funding Corp. of Am. Sec. Litig.*, 416 F.Supp. 161, 177 (C.D.Cal.1976) (same); *Asbestos Litig.*, 963 F.Supp. 247, 251 (S.D.N.Y.1997) (acknowledging that the transferee court is empowered to conduct all pretrial proceedings, which includes amendment of a complaint to add parties or claims); *In re Prudential Sec. Inc. Ltd.*

*P'ships. Litig.*, 158 F.R.D. 562, 568–69 (S.D.N.Y.1994) (same). It would be inconsistent—and unjust—to require parties that avail themselves of this rule to forfeit their right to have the law of the transferor court applied. *See Menowitz v. Brown*, 991 F.2d 36, 40 (2d Cir.1993) (acknowledging that the choice-of-law rules further the policies of the Supreme Court enunciated in *Erie v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), by "insuring that a pre-trial transfer under Section 1407 does not lead to the application of a state substantive law that differs from the law applicable in the jurisdiction where the case was properly filed.").

## III. SUBJECT MATTER JURISDICTION

### A. Diversity of Citizenship

The Waagner defendants argue that this Court lacks subject matter jurisdiction pursuant to Section 1332(a) of Title 28 of the United States Code. *See* Waagner Mem. at 4. They argue, in particular, that complete diversity of citizenship is lacking because some of the decedents were United States citizens domiciled abroad.[8] *See id.*

■ The federal diversity statute gives the district courts jurisdiction over "citizens of a State" and "citizens of a foreign state." 28 U.S.C. § 1332(a) (1988). It is well-established that there must be complete diversity and that diversity is not complete if any plaintiff is a citizen of the same state as any defendant.[9] *See, e.g.,*

---

**8.** Although lack of subject matter jurisdiction was raised only by the Waagner defendants, the issue affects the ability of this Court to proceed with respect to *all* defendants in these cases. I will therefore address the issue *sua sponte* as to the other defendants. In so doing, I look not only to the law of this circuit, but also to the law of the transferor courts. *See In re Ski Train Fire in Kaprun, Austria on November 11, 2000 (Siemens AG Oesterreich)*, 230 F.Supp.2d 403, 404 n. 3

(S.D.N.Y.2002) (*"Kaprun Siemens Austria"*) (indicating that the actions consolidated before this Court were originally filed in the First, Second, Third, Ninth, and Eleventh Circuits).

**9.** When diversity of citizenship is challenged by a defendant, "the plaintiff bears the burden of demonstrating that the grounds for diversity exist and that diversity is complete." *Advani Enter., Inc. v. Underwriters at Lloyds*, 140

*Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 373–74, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978); *Strawbridge v. Curtiss,* 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806).

A citizen of a state, within the meaning of section 1332, is a person domiciled within that state who is a citizen of the United States. *See Gilbert v. David,* 235 U.S. 561, 569, 35 S.Ct. 164, 59 L.Ed. 360 (1915). A domicile, unlike a residence, is a permanent abode to which a person intends to return. *See Palazzo ex rel. Delmage v. Corio,* 232 F.3d 38, 42 (2d Cir.2000) (citing *Linardos v. Fortuna,* 157 F.3d 945, 948 (2d Cir.1998)); *see also Juvelis ex rel. Juvelis v. Snider,* 68 F.3d 648, 651 n. 3 (3d Cir.1995) (" '[T]he domicile of a person is the place where he has his true, fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning.' "); *Weible v. United States,* 244 F.2d 158, 163 (9th Cir.1957) ("Residence is physical, whereas domicile is generally a compound of physical presence plus an intention to make a certain definite place one's permanent abode...."). "United States citizens who are domiciled abroad are neither citizens of any state of the United States nor citizens or subjects of a foreign state, and [Section] 1332(a) does not provide that the courts have jurisdiction over a suit to which such persons are parties." *Cresswell v. Sullivan & Cromwell,* 922 F.2d 60, 68 (2d Cir.1990); *see also Newman–Green, Inc. v. Alfonzo–Larrain,* 490 U.S. 826, 828–29, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989); *Van Der Schelling v. United States News & World Report,* 213 F.Supp. 756, 757 (E.D.Pa.), *aff'd,* 324 F.2d 956 (3d Cir. 1963).

For purposes of diversity jurisdiction, "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent...." 28 U.S.C. § 1332(c)(2)(2002). Plaintiffs John and Suzanne Habblett (collectively, "the Habbletts"), Dr. Dick and Carole Baker (collectively, "the Bakers"), and Rudolph and Angela Kern (collectively, "the Kerns") bring this action on behalf of the estates of Jennifer, Michael, and Kyle Goodridge, Carrie Baker, and Erich Kern, respectively. Thus, the Habbletts are deemed to be citizens of the "State" of Jennifer, Michael, and Kyle Goodridge, the Bakers are citizens of the "State" of Carrie Baker, and the Kerns are citizens of the "State" of Erich Kern.[10]

The Waagner defendants argue that the Habbletts are not citizens of any "State" in the United States because Jennifer Michael, and Kyle Goodridge were living abroad at the time of their death. *See* Waagner Mem. at 5. They are wrong.

Jennifer Goodridge was living in Germany at the time of her death because she was "on temporary assignment with her husband, who was in the military." Waagner Compl. ¶ 8. As the Waagner defendants acknowledge with respect to the Bakers and Kerns, there is a presumption that an individual retains his or her domicile upon entry into the military and assignment to another state or country.[11] *See, e.g., Furman v. General Dynamics Corp.,* 377 F.Supp. 37, 45 (S.D.N.Y.1974)

---

F.3d 157, 160 (2d Cir.1998) (citations omitted).

**10.** It should be noted that plaintiffs are suing in their individual capacities, as well as their representative capacities. The pleadings clearly establish complete diversity among the individual plaintiffs because the Habbletts and Bakers are Florida citizens, the Kerns are New York citizens, and the defendants are all foreign corporations.

**11.** The Waagner defendants concede that the Bakers and Kerns are citizens of the "State" from which their children enlisted in the military. *See* Waagner Mem. at 5.

(acknowledging general rule that military service does not affect a person's domicile, in the absence of acts showing an intent to change it); *Ellis v. Southeast Constr. Co.,* 260 F.2d 280, 281–82 (8th Cir.1958) (same); *Gambelli v. United States,* 904 F.Supp. 494, 496–97 (E.D.Va.1995) (same); *Deckers v. Kenneth W. Rose, Inc.,* 592 F.Supp. 25, 27 (M.D.Fla.1984) (same). The reason for this rule is that it is presumed that a person serving in the military intends to return to his home. *See Bowman v. Du-Bose,* 267 F.Supp. 312, 313 (D.S.C.1967) (citation omitted). Common sense, consistency, and fairness require that this presumption be extended to a spouse who accompanies a military person on a tour of duty. *See Furman,* 377 F.Supp. at 45 ("[C]onsistent application of [the military service] rule requires that it include military wives who accompany their husbands on tours of duty.").

■ The presumption is, however, rebuttable by a showing of intent to make a home in the place of military service. *See Rosado–Marrero by Rosado–Cancel v. Hospital San Pablo, Inc.,* 927 F.Supp. 576, 577 (D.P.R.1996) (citing *Ellis,* 260 F.2d at 282) ("The fact that one is on military duty does not preclude him from establishing his residence where he is stationed if the circumstances show an intent on his part to abandon his original domicil[e] and adopt the new one."). Proof of a change in domicile requires clear and unequivocal evidence.[12] *See* 13B Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* ("Fed.Prac.") § 3617 (1984). Here, the Complaint explicitly alleges that Jennifer Goodridge always regarded her domicile as the United States. *See* Waagner Compl. ¶ 8. Because defendants have offered no evidence to suggest that Jennifer Goodridge intended to remain in Ger-

many after the conclusion of her husband's assignment, her domicile did not change by virtue of her move abroad. Michael and Kyle Goodridge are also domiciliaries of the United States because they carry the domicile of their parents. *See Rosario,* 962 F.2d at 224 (recognizing that a minor's domicile is the same as that of its parents since most children are presumed incapable of forming the requisite intent to establish their own domicile). Thus, the Habbletts are citizens of the United States.

**B. Sufficiency of Pleadings**

■ The Waagner defendants additionally argue that plaintiffs have improperly pled subject matter jurisdiction because they failed to specifically allege the states in which Carrie Baker and Erich Kern were domiciled. *See* Waagner Mem. at 6–7. This lack of specificity is inconsequential.

As to all of the decedents, the Complaint clearly alleges that each individual is a United States citizen and considers the United States to be his or her permanent domicile. *See* Waagner Compl. ¶¶ 8–12. The Complaint also alleges that all defendants are Austrian corporations, none of which have a principal place of business in the United States. *See* Waagner Compl. ¶¶ 13–16; *see also* Nemeth Dec. ¶¶ 3, 9; Mayerhofer Dec. ¶¶ 1, 12; Wurzinger Dec. ¶¶ 1, 15; Rosegger Dec. ¶¶ 1, 12. These allegations are sufficient to establish diversity of citizenship pursuant to section 1332(a)(2).

Plaintiffs are required to provide only "a short and plain statement of the grounds upon which the court's jurisdiction depends." *See* Fed.R.Civ.P. 8(a). The Complaint makes clear that jurisdiction is

---

**12.** Although the burden of proving diversity as a basis for federal jurisdiction lies with the plaintiffs, the burden of showing a change in the domicile at enlistment rests with the defendant. *See Bowman,* 267 F.Supp. at 313–14 (citations omitted).

based upon the decedents being United States citizens and the defendants being foreign corporations. No greater specificity is needed. The fact that plaintiffs have failed to plead the particular states of domicile of the decedents is irrelevant because the Court's jurisdiction depends *only* on whether they were United States citizens, not on their states of domicile. Plaintiffs have therefore met their pleading burden with respect to subject matter jurisdiction.

Even if plaintiffs had failed to allege facts sufficient to establish diversity jurisdiction, the deficiency would not warrant dismissal of the complaint. *See Canedy v. Liberty Mut. Ins. Co.,* 126 F.3d 100, 103 (2d Cir.1997); *see also Jacobs v. Patent Enforcement Fund, Inc.,* 230 F.3d 565, 568 n. 3 (2d Cir.2000) ("[A]n inadequate pleading of diversity does not in itself constitute an actual defect of federal jurisdiction."); *Blue Ridge Ins. Co. v. Stanewich,* 142 F.3d 1145, 1148 (9th Cir.1998). By statute, "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." 28 U.S.C. § 1653. Such amendments are freely permitted where necessary to avoid dismissal on purely technical grounds. *See Canedy,* 126 F.3d at 103; *Blue Ridge,* 142 F.3d at 1148.

Here, plaintiffs have submitted additional affidavits regarding the decedents' states of domicile. *See* 11/25/02 Declaration of Dr. Dick Baker ("Baker Dec."), Ex. 2 to Cohen Dec. (declaring that both his and his daughter's domiciles at the relevant times were Florida); 11/22/02 Declaration of John S. Habblett ("Habblett Dec."), Ex. 3 to Cohen Dec. (declaring that

his domicile at the relevant time was Florida and that his daughter's domicile was Alabama); 11/22/02 Declaration of Rudolph Kern ("Kern Dec."), Ex. 4 to Cohen Dec. (declaring that both his and his son's domiciles at the relevant times were New York). Having received those affidavits, the Court is doubly satisfied that the record, as supplemented, establishes diversity of citizenship. Because the facts stated in the affidavits are uncontested, I deem the Complaint amended to include these facts. *See Realty Holding Co. v. Donaldson,* 268 U.S. 398, 399–400, 45 S.Ct. 521, 69 L.Ed. 1014 (1925) (where record as whole demonstrates jurisdiction, pleadings may be considered amended).

## IV. STANDING

The Waagner defendants argue that plaintiffs do not have standing to assert claims on behalf of the decedents. *See* Waagner Mem. at 7. This issue is not ripe for determination.[13]

California law provides, in relevant part:

A cause of action for the death of a person caused by the wrongful act or neglect of another may be asserted by any of the following persons *or by the decedent's personal representative* on their behalf: (a) The decedent's surviving spouse, domestic partner, children, and issue of deceased children, or, if there is no surviving issue of the decedent, the persons, including the surviving spouse or domestic partner, who would be entitled to the property of the decedent by intestate succession....

---

**13.** Defendants acknowledge that plaintiffs are not required to plead capacity, *see* Fed. R.Civ.P. 9(a) ("It is not necessary to aver the capacity of a party to sue or be sued ... in a representative capacity ..., except to the extent required to show the jurisdiction of the court."), but argue that this issue should

nonetheless be decided now or it will be deemed waived, *see* Waagner Mem. at 7 n. 8. Defendants' concerns regarding waiver are unfounded. In order to preserve this affirmative defense, defendants can simply raise it in their answer.

Cal. Civ. Pro. § 377.60 (2003) (emphasis added). Plaintiffs have submitted declarations stating that Baker and Kern are the personal representatives of their respective decedents' estates, *see* Baker Dec. ¶ 3; Kern Dec. ¶ 3, and that Habblett has the authority to prosecute this action, *see* Habblett Dec. ¶ 4.[14] The Waagner defendants dispute the sufficiency of plaintiffs' unsupported declarations.[15] *See id.* Discovery is therefore needed to establish that plaintiffs have been duly appointed as the executors or administrators of the decedents' estates. *See* Cal. Prob.Code § 58 (defining a "personal representative" as an "executor, administrator, administrator with the will annexed, special administrator, successor personal representative. . . ."). Any such discovery, however, should await merits discovery because the standing issue is not case-dispositive. Even if defendants demonstrate that one or all of the plaintiffs lack capacity to sue in a representative capacity, plaintiffs can still proceed in their individual capacities.

## V. PERSONAL JURISDICTION

The Waagner defendants contend that plaintiffs cannot prove that this Court can exercise personal jurisdiction over defendants in California. *See* Waagner Mem. at 13. Plaintiffs, in turn, argue that the presence of the Waagner defendants in California warrants the grant of jurisdictional discovery so that plaintiffs can "support their well pled complaint and respond to defendants' fact-based affidavits." Pl. Mem. at 11, 20–21. Plaintiffs additionally argue that if this Court ultimately finds that it can exercise general jurisdiction over one Waagner defendant, it can exercise jurisdiction over *all* of the Waagner defendants because the companies operate as a single "enterprise." *See id.* at 17–19. Lastly, plaintiffs argue, in the alternative, that this Court should transfer the Complaint to Colorado where the Waagner enterprise operates through its subsidiary, Packaging Systems International ("PSI").[16] *See id.* at 12.

### A. Legal Standard

▇▇▇▇ Plaintiff has the burden to establish the court's personal jurisdiction over a defendant. *See Cubbage v. Merchent,* 744 F.2d 665, 667 (9th Cir.1984). When a defendant moves to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the limits placed on the pretrial proceedings by the court determine the quantum of proof required to meet that burden. *See Data Disc, Inc. v. Systems Tech. Assocs., Inc.,* 557 F.2d 1280, 1285 (9th Cir.1977). Where the court relies exclusively on affidavits and discovery materials,[17] without holding an evidentiary

14. Contrary to defendants' suggestion, *see* Waagner Mem. at 7–8, there is no need for plaintiffs to additionally prove that they are entitled to the property by intestate succession or that they were dependent on the decedents because the statutory requirement is expressed in the disjunctive.

15. Defendants additionally argue that, even if naked allegations were sufficient to prove standing, Habblett's declaration is deficient because it avers only that Habblett "has authority to prosecute the action"—not that he is the decedents' personal representative. *See* Waagner Mem. at 5, n. 15. While Habblett may indeed lack capacity to sue, the Court needs more information regarding what is meant by "authority to prosecute the action" before it can make a final determination.

16. PSI is a manufacturer and distributor of environmental and packaging technology. Founded under the laws of the state of Delaware, PSI has its principal place of business in Denver, Colorado. *See* Rosegger Dec. ¶ 19.

17. "Discovery is appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Data Disc,* 557 F.2d at 1285 n. 1.

hearing, "plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) (quoting *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir.1995) and citing *AT & T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir.1996)). In determining whether plaintiff has met this burden, uncontroverted allegations in the complaint must be taken as true, and "conflicts between the facts contained in the parties' affidavits must be resolved in [plaintiffs'] favor." *AT & T*, 94 F.3d at 588–89 (internal quotation marks and citations omitted).

 If the pleadings and other materials raise issues of credibility or disputed questions of fact regarding jurisdiction, the court may take evidence at a hearing. *See Data Disc*, 557 F.2d at 1285 (citing 5 Fed. Prac. § 1373). In this situation, the plaintiff must establish the jurisdictional facts by a preponderance of the evidence. *See id.*

### B. California Law on Personal Jurisdiction

 "The power of a federal court entertaining a case based on diversity of citizenship to exercise personal jurisdiction over a nonresident defendant turns on two independent considerations: whether an applicable state rule or statute potentially confers personal jurisdiction over the defendant, and whether assertion of such jurisdiction accords with constitutional principles of due process." *Data Disc*, 557 F.2d at 1286 (citations omitted). The California long-arm statute permits a court to exercise personal jurisdiction over a nonresident defendant "on any basis not inconsistent with the Constitution of [the state of California] or of the United States." Cal. Civ. Proc. § 410.10 (2002). Because California's jurisdictional statute is coextensive with federal due process

requirements, the jurisdictional analyses under state law and federal due process are the same. *See Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1110 (9th Cir.2002); *FDIC v. British–American Ins. Co.*, 828 F.2d 1439, 1441 (9th Cir.1987).

For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least "minimum contacts" with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal quotation marks and citation omitted). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its law." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) (citation omitted). In *World–Wide Volkswagen Corp. v. Woodson*, the Supreme Court explained that "the foreseeability that is critical to due process analysis ... is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

 The exercise of personal jurisdiction may be either general or specific depending on the nature of the foreign defendant's contacts with the forum state. *See Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir.2002). General jurisdiction can be asserted when the nonresident's activities within a State are "substantial" or "continuous and systematic," even if the cause of action is unrelated to the defendant's forum activities. *See Data Disc*, 557 F.2d at 1287. The standard for establishing general jurisdiction is "fairly

**730**

high," *see Brand v. Menlove Dodge,* 796 F.2d 1070, 1073 (9th Cir.1986), and requires that the defendant's contacts approximate physical presence, *see Gates Learjet Corp. v. Jensen,* 743 F.2d 1325, 1331 (9th Cir.1984). Factors to be taken into consideration are whether the company: (1) maintains an office in the forum state, (2) has employees in the forum state, (3) uses bank accounts in the forum state, or (4) markets or sells products in the forum states. *See Figi Graphics, Inc. v. Dollar Gen. Corp.,* 33 F.Supp.2d 1263, 1265 (S.D.Cal.1998) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). Specific jurisdiction, on the other hand, is found when the cause of action specifically arises out of or relates to the defendant's activities within the forum. *See id.* The Ninth Circuit has held that a claim "arises out of" a defendant's conduct if the claim would not have arisen "but for" the defendant's forum related conduct. *Panavision Int'l v. Toeppen,* 141 F.3d 1316, 1322 (9th Cir.1998).

▮▮▮▮ The existence of a relationship between a parent company and its subsidiaries is not sufficient to establish general jurisdiction over the parent on the basis of the subsidiaries' minimum contacts with the forum. *Transure, Inc. v. Marsh and McLennan, Inc.,* 766 F.2d 1297, 1299 (9th Cir.1985). However, " 'if the parent and subsidiary are not really separate entities, or one acts as an agent of the other, the local subsidiary's contacts with the forum may be imputed to the foreign parent corporation.' " *Doe,* 248 F.3d at 926 (quoting *El–Fadl v. Central Bank of Jordan,* 75 F.3d 668, 676 (D.C.Cir.1996)). An alter ego or agency relationship is exemplified by parental control of the subsidiary's internal affairs or daily operations. *See Kramer Motors, Inc. v. British Leyland, Ltd.,* 628 F.2d 1175, 1177 (9th Cir.1980).

▮▮▮▮ Where plaintiffs can establish that one corporation is the alter ego of another, courts may " 'pierce the corporate veil' jurisdictionally and attribute 'contacts' accordingly." *See ADO Finance, AG v. McDonnell Douglas Corp.,* 931 F.Supp. 711, 715 (C.D.Cal.1996) (quoting *Certified Bldg. Prod., Inc. v. NLRB,* 528 F.2d 968, 969 (9th Cir.1976)). In diversity actions, federal courts look to state law to determine the requirements for "piercing the corporate veil." *See Perrotta v. Roadway Global Air,* No. C–96–20281 SW, 1996 WL 723031, at * 1 (N.D.Cal. Dec.9, 1996). "Under California law, a parent corporation is the alter ego of its subsidiary if it controls the subsidiary to such a degree as to render it the mere instrumentality of the parent." *Id.* (citing *Institute of Veterinary Pathology, Inc. v. California Health Labs., Inc.,* 116 Cal.App.3d 111, 119, 172 Cal.Rptr. 74 (1981)). To establish jurisdiction, the plaintiff therefore must prove both of the following: "(1) that there is such unity of interest and ownership that the separate personalities [of the two entities] no longer exist[,] and (2) that failure to disregard [their separate identities] would result in fraud or injustice." *AT & T,* 94 F.3d at 591 (citations omitted).

▮▮▮▮ "The agency test is satisfied by a showing that the subsidiary functions as the parent corporation's representative in that it performs services that are 'sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services.' " *Doe,* 248 F.3d at 928 (quoting *Chan v. Society Expeditions, Inc.,* 39 F.3d 1398, 1405 (9th Cir. 1994)). In other words, "if a subsidiary performs functions that the parent would otherwise have to perform, the subsidiary then functions as 'merely the incorporated department of its parent.' " *Id.* (quoting

*Gallagher v. Mazda Motor of America, Inc.,* 781 F.Supp. 1079, 1084 (E.D.Pa. 1992)).

## C. Jurisdictional Allegations

Plaintiffs make the following jurisdictional allegations, which are drawn from the Waagner Complaint and plaintiffs' opposition papers and supporting materials.

### 1. Contacts with California

Plaintiffs allege that there are two ways in which the Waagner enterprise maintains "continuous and systematic contact" with California. *First,* the Waagner Biro ("WB") division of leisure technology,[18] which designed and manufactured amusement park rides, made direct sales in the state of California and partnered with IN-TAMIN and Premier Rides, two companies that also manufactured and sold amusement products into California. *See* Pl. Mem. at 20; Waagner Compl. ¶ 13 (alleging that WBB "continuously and systematically targets and directs sales efforts, marketing and materials to the United States markets and has provided, sold and maintained materials to Disneyland in Anaheim, California and to other recreational and commercial facilities located in the U.S. . . . ."); *see also* Tim O'Brien, *In Order to Keep Up the Pace, Parks Spending Money in 2001,* Amusement Business

(Jan. 8, 2001), Ex. 17A to Cohen Dec. (illustrating that the "Sun Wheel" at Disney's California Adventure theme park was manufactured by INTAMIN/Waagner–Biro and sold to Disney by Premier Rides).[19] *Second,* there have been approximately thirty contracts or sales by Binder in the United States in the past five years,[20] *see* Database Print-out of 29 References to U.S. Delivery of Parts, Ex. 19 to Cohen Dec., at least two of which were in California, *see* Pl. Mem. at 21; Waagner Compl. ¶ 16 (alleging that Binder "maintains continuous and systematic contacts with the US, by importing products, technology, equipment, systems and/or services from its sister and/or affiliated Waagner and/or other companies, as well as through its subsidiary Packaging Systems International."); *see also* Rosegger Dec. ¶ 18 (admitting two sales in California—one in May 2000 that represented .5% of Binder's total sales for that year and one in 2002 for replacement parts to the same customer). Plaintiffs concede that their information regarding each of these contacts is limited and therefore request jurisdictional discovery so that they can establish the nature and extent of the contacts. *See* Pl. Mem. at 21 (lamenting that the information plaintiffs need to establish jurisdiction is not publicly available).

18. WB was the entity that originally designed the Kaprun cable car. *See* Pl. Mem. at 13. WB was purchased by Mericon in 1995. *See id.;* Ingrid Dengg, *If I Had Thrown Dice,* Trend (May 1999), Ex. 6B to Cohen Dec., at 6. Later that year, the two companies were merged into WBAG, which ultimately became WBB. *See* Pl. Mem. at 14, n. 8. In 1999, the operational divisions of WBB were reorganized into five distinct subsidiary companies, each representing a specific business area. *See id.* at 15; Flowchart of Company Structure, Ex. 12 to Cohen Dec.

19. The Waagner defendants deny this allegation. *See* Waagner Mem. at 13. They claim

only that in 1997, Planungsgesellschaft fur Stahl-und Maschinenbau GmbH ("PSM"), a former Austrian subsidiary of WBB, entered into a contract with Walt Disney Imagineering ("Disney") related to the sale of a ferris wheel for Disneyland in Anaheim, California. *See* Nemeth Dec. ¶ 25. PSM designed and manufactured the ferris wheel in Austria, and Disney installed the ferris wheel in California. *See id.* WBB was not directly involved in this transaction. *See id.*

20. Plaintiffs have been unable to uncover evidence as to where in the United States these contacts occurred. *See* Pl. Mem. at 21.

## 2. The Waagner Enterprise

Plaintiffs additionally allege that each Waagner defendant is an instrumentality of WBBB. *See* Waagner Compl. ¶ 17. Although the Waagner entities are privately held, Herbert W. Liaunig, the president of WBBB, dominates and controls each of the Waagner companies through "interlocking directors of the supervisory and managing boards, creating and deflating corporate bodies, manipulating management and investment strategies, and shuffling assets and liability about like peas under shells." Pl. Mem. at 11; *see also* Waagner Compl. ¶ 17 (alleging that the boards of WBBB and WBB are virtually identical and that all of the Waagner defendants, except Binder, have the same address in Vienna); Gerald Stephan, *Il Maestro*, Wirtschaftsbatt (Mar. 18, 2002), Ex. 6A to Cohen Dec. (describing Liaunig as "the undisputed master in the high art of corporate structure"). He drains the assets of one company to meet the cash needs of another, without regard to the separate corporate identities of each. *See* Waagner Compl. ¶ 17.

Plaintiffs further claim that Liaunig has used the corporate form as a "shield" to insulate the Waagner enterprise from liability by divesting WBB, the company that allegedly designed and manufactured the defective products at issue in this lawsuit, of its assets, thereby depriving the victims of any chance of recovery.[21] *See* Pl. Mem. at 11, 22; Waagner Compl. ¶ 17.

21. The Waagner defendants contend that plaintiffs' exhibits reveal that WBB began divesting its assets as early as 1999, two years before the Kaprun disaster. *See* Memorandum of Law of Waagner Defendants in Further Support of Motion to Dismiss ("Waagner Rep. Mem.") at 1, n. 1; *see also* 3/26/99 Sales Agreement, Ex. 13A to Cohen Dec. (demonstrating that WBB sold its Cableway Engineering Department to Leitner Austria GmbH

## D. Analysis

### 1. Jurisdiction in California

As plaintiffs themselves tacitly concede, they have insufficient evidence at this time to make out a prima facie case of general jurisdiction over the Waagner defendants in California.[22] *See* Pl. Mem. at 11–23 (nowhere arguing that plaintiffs have met their burden of establishing jurisdiction in California). None of the factors that typically justify general jurisdiction are present here. For example, the Waagner defendants are not incorporated in California; are not licensed to conduct business in California; do not maintain an office or postal address in California; are not listed in a telephone book in California; own no real estate or personal property in California; do not have employees in California; and do not maintain bank accounts in California. *See* Nemeth Dec. ¶¶ 8–24; Mayerhoffer Dec. ¶¶ 5–24; Wurzinger Dec. ¶¶ 13–26; Rosegger Dec. ¶¶ 11–16.

▮▮▮▮ The two contacts alleged are not remotely sufficient to establish "continuous and systematic" activities in California. The sale of a *single* ferris wheel several years before this lawsuit was instituted can hardly be considered "continuous" contact with California. *See, e.g., Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir.2000) (holding that occasional, unsolicited sales of tournament tickets and merchandise to California residents are insufficient to cre-

in early 1999); Nemeth Dec. ¶ 6 (affirming that WBB spun off all of its manufacturing and constructions divisions in the period from 1999 through the beginning of 2001).

22. Because the Waagner Complaint does not allege that plaintiffs' claims arise out of any actions that occurred in California, there is no need for me to address specific jurisdiction.

ate general jurisdiction); *Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986) (finding occasional car sales to California residents insufficient to create general jurisdiction); *Fisher Governor Co. v. Superior Court of City and County of San Francisco*, 53 Cal.2d 222, 225, 1 Cal.Rptr. 1, 347 P.2d 1 (1959) (holding that "more contacts are required for the assumption of [general] jurisdiction than sales and sales promotion within the state"). Nor can *two* sales by Binder be deemed "substantial" activity in California.[23] Without jurisdiction over at least one Waagner defendant, the Court cannot even consider plaintiffs' argument that the corporate veil should be pierced. Thus, the only remaining question is whether to afford plaintiffs the opportunity for discovery that might uncover evidence sufficient to support jurisdiction in California.

There is no compelling reason to grant such jurisdictional discovery. While the Court is sympathetic to plaintiffs' difficulty in obtaining detailed information about the

Waagner companies, discovery regarding defendants' alleged contacts in California—a few isolated sales, which defendants don't dispute—is unlikely to demonstrate the "continuous and substantial" level of activity necessary to establish general jurisdiction in California.[24] Moreover, discovery will undoubtedly delay this case. Thus, permitting this discovery is likely to result in more harm than benefit to plaintiffs.

**2. Transfer to Colorado**

■ Having found that there is no basis for personal jurisdiction over the Waagner defendants in California, I must now consider plaintiffs' request that this action be transferred to Colorado. Plaintiffs rely on three statutory provisions that authorize district courts to transfer actions under certain limited circumstances: 28 U.S.C. §§ 1404(a),[25] 1406(a),[26] and 1631.[27] However, only one inquiry is necessary: whether the "interests of justice" require transfer or dismissal.[28] *See In re Ski Train Fire in Kaprun, Austria on Novem-*

23. Plaintiffs' allegation that Binder maintains continuous and systematic contact with the United States by "importing" from its "sister and/or affiliated companies" does not subject it or any of the other Waagner defendants to jurisdiction in California. Foreign purchasers of products from a California resident are not subject to jurisdiction in California on that basis alone. *See Futuresat Indus., Inc. v. Superior Court*, 3 Cal.App.4th 155, 159, 4 Cal. Rptr.2d 74 (1992).

24. Although discovery may lead to evidence that will support plaintiffs' enterprise theory of liability, that information will be useless without a basis for jurisdiction in California over any of the Waagner defendants.

25. Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

26. Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of

justice, transfer such case to any district or division in which it could have been brought."

27. Section 1631 provides that "[w]henever a civil action is filed in a court ... and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred."

28. It is not entirely clear whether section 1631 or section 1404(a) apply in cases where personal jurisdiction is lacking. Over forty years ago, the Supreme Court held that a district court lacking both personal jurisdiction and proper venue could nonetheless transfer the action under section 1406(a) to a district where the defects would be cured. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463,

*ber 11, 2000 (Thyssen and Beton)*, MDL 1428, Nos. 02 Civ. 2491, 01 Civ 7245, 2003 WL 1477867, at *1 (S.D.N.Y. Mar.20, 2003) (*"Kaprun Thyssen/Beton"*) (citing *Pares v. Gordon*, 1992 WL 296437 at *1). "Normally transfer will be in the interest of justice because [ ] dismissal of an action that could be brought elsewhere is 'time-consuming and justice-defeating.'" *Miller*, 905 F.2d at 262 (quoting *Goldlawr*, 369 U.S. at 467, 82 S.Ct. 913).

■ The interests of justice clearly require transfer here. Plaintiffs have made an initial showing that there may be jurisdiction over at least some of the Waagner defendants in Colorado, *see* Pl. Mem. at 25–36 (arguing that PSI, a subsidiary of Binder, maintains a principal place of business in Colorado and is an agent and/or alter ego of Binder and the other named Waagner defendants),[29] but require discovery to meet their prima facie burden.[30] If

---

466, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962). Some courts have expanded that rule, holding that whether or not venue was proper, lack of personal jurisdiction could be remedied by transfer, under either section 1404(a) or section 1406(a), to a district in which personal jurisdiction could be exercised. *See, e.g., Porter v. Groat*, 840 F.2d 255, 257 (4th Cir. 1988); *Corke v. Sameiet M.S. Song of Norway*, 572 F.2d 77, 80 (2d Cir.1978); *United States v. Berkowitz*, 328 F.2d 358, 361 (3d Cir.1964). The Ninth Circuit has declined to rule on whether sections 1406(a) and 1404(a) authorize a transfer for lack of personal jurisdiction. *See Nelson v. International Paint Co.*, 716 F.2d 640, 643 n. 4 (9th Cir.1983). It has suggested, however, in the context of the application of choice-of-law rules, that transfer under either statute is permissible. *See Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964, 967 (9th Cir.1993) (distinguishing actions transferred under 28 U.S.C. § 1404(a) for the convenience of the parties from actions transferred under §§ 1404(a) *or* 1406(a) to cure a lack of personal jurisdiction in the transferor district) (emphasis added).

While the Tenth Circuit in *Viernow v. Euripides Devt. Corp.*, 157 F.3d 785, 793 (10th Cir.1998), as well as a few district courts throughout the country, *see, e.g., United States v. American River Transp., Inc.*, 150 F.R.D. 587, 591 (C.D.Ill.1993); *Jaffe v. Julien*, 754 F.Supp. 49, 53 (E.D.Pa.1991), has held that transfer under section 1631 is proper where personal jurisdiction is lacking, several district courts in the Second Circuit have interpreted section 1631 to authorize transfer only where the transferring court lacks subject matter jurisdiction—not personal jurisdiction, *see, e.g., Chan v. Mui*, No. 92 Civ. 8258 (MBM), 1993 WL 427114, at *2 (S.D.N.Y. Oct.20, 1993); *Pares v. Gordon*, No. 91 Civ. 1344(KMW), 1992 WL 296437, at *1

(S.D.N.Y. Oct.8, 1992); *Levy v. Pyramid Co. of Ithaca*, 687 F.Supp. 48, 51 (N.D.N.Y.1988), *aff'd without consideration of this point*, 871 F.2d 9 (2d Cir.1989). *But see John Burgee Architects v. Lewis*, No. 96 Civ. 0734 (RPP), 1998 WL 35111, at *2 (S.D.N.Y. Jan. 30, 1998). The Ninth Circuit has never directly addressed the issue, but has upheld transfers pursuant to section 1631 where personal jurisdiction was lacking, thereby suggesting that the provision does indeed apply to any type of jurisdiction. *See Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir.1990). In any event, because the inquiries under section 1631 and 1404(a) are the same as that under section 1406(a), I need not rule on whether sections 1631 and 1404(a) apply in cases where personal jurisdiction is lacking.

**29.** Jurisdiction may be found in Colorado where a foreign parent maintains a subsidiary in a forum state and the subsidiary either: 1) acts as an agent for the parent, *see Behagen v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir.1984) ("[W]hen a foreign defendant carries on a continuous and systematic part of its general business in the forum state through its agents, that state's exercise of jurisdiction over an unrelated cause of action is reasonable and just.") (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 438, 72 S.Ct. 413, 96 L.Ed. 485 (1952)); or 2) exists as an alter ego of the parent, *see Quarles v. Fuqua Indus., Inc.*, 504 F.2d 1358, 1364 (10th Cir.1974) (explaining that under the alter ego doctrine, "the corporate entity is disregarded and liability fastened on an [entity] who uses the corporation merely as an instrumentality to conduct [its] own personal business").

**30.** Unlike in the Second Circuit, where discovery is not permitted if the plaintiff fails to

this case is dismissed, however, plaintiffs will be unable to establish jurisdiction in Colorado because they will be barred from refiling in Colorado by the two year statute of limitations. *See* C.R.S. § 13–80–102 (2003). To deny plaintiffs the opportunity to sue the Waagner defendants in a jurisdiction where they could have originally brought suit—and possibly anywhere in the United States [31]—solely because they selected the wrong forum at the outset of this case would be grossly unfair.[32] *See In re McCauley*, 814 F.2d 1350, 1352 (9th Cir.1987) (acknowledging that the very purpose of allowing transfers to cure lack of jurisdiction is to " 'aid litigants who were confused about the proper forum for review' ") (quoting *American Beef Packers, Inc. v. I.C.C.*, 711 F.2d 388, 390 (D.C.Cir.1983)).

## VI. FAILURE TO STATE A CAUSE OF ACTION

The Waagner defendants argue that the Complaint fails to state a cause of action against WBBB, WBH, and Binder, which were not involved in the design, manufacture, distribution or modification of the funicular train at issue in this lawsuit, because plaintiffs did not allege that these defendants were in the "chain of distribution" of the alleged defective product—the funicular train. *See* Waagner Mem. at 31–32. Plaintiffs maintain that they have stated a claim against these three defendants through their allegations that they are mere instrumentalities of WBBB. *See* Pl. Mem. at 37.

■ "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984)). Thus, a plaintiff need only plead " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A plaintiff need not, in other words, plead the elements of a claim. *See In re Initial Public Offering Sec. Litig.*, 241 F.Supp.2d 281, 323 (S.D.N.Y.2003) ("Rule 8(a) does

make out a prima facie case of jurisdiction, *see, e.g., In re Ski Train Fire in Kaprun, Austria on November 11, 2000 (AHP)*, MDL No. 1428, No. 01 Civ. 7342, 2003 WL 1807148, at *6 (S.D.N.Y. Apr. 4, 2003) (denying request for jurisdictional discovery for failure to make out prima facie case) (citations omitted), discovery is freely allowed in the Tenth Circuit, *see Budde v. Ling–Temco–Vought, Inc.*, 511 F.2d 1033, 1035 (10th Cir.1975) ("When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues raised by that motion."); *see also Sizova v. National Inst. of Standards & Tech.*, 282 F.3d 1320, 1326 (10th Cir.2002) (acknowledging that the refusal to grant discovery where " 'pertinent facts bearing on the question of jurisdiction are controverted ... or where a more satisfactory showing of the facts is necessary' " constitutes an abuse of discretion) (citing *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir.1995) and quoting *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n. 24 (9th Cir.1977)).

**31.** Plaintiffs have proposed no alternative venues in the United States where jurisdiction over the Waagner defendants may be established, nor does it seem likely—based on the facts presented on this motion—that any such venues exist.

**32.** This case is clearly distinguishable from *Kaprun Thyssen/Beton*, in which I denied transfer, because in that case, plaintiffs had a forum in which to refile their lawsuit. *See* 2003 WL 1477867 at *2 (recognizing that plaintiffs could refile in their preferred jurisdiction before the expiration of the three year statute of limitations for wrongful death actions in Montana).

not require plaintiffs to plead the legal theory, facts or elements underlying their claim."). In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Seamons v. Snow*, 84 F.3d 1226, 1231–32 (10th Cir.1996).

Under Colorado law, the corporate veil of a parent corporation may be pierced where "the corporate structure is used so improperly that the continued recognition of the corporation as a separate legal entity would be unfair." *Yoder v. Honeywell, Inc.*, 104 F.3d 1215, 1220 (10th Cir.1997). "Thus, if it is shown that shareholders used the corporate entity as a mere instrumentality for the transaction of their own affairs without regard to separate and independent corporate existence, or for the purpose of defeating or evading important legislative policy, or in order to perpetrate a fraud or wrong on another, equity will permit the corporate form to be disregarded and will hold the shareholders personally responsible for the corporation's improper actions." *Id.* (citing *Micciche v. Billings*, 727 P.2d 367, 372–73 (Colo.1986)).

Here, plaintiffs allege that WBB designed, engineered and manufactured major parts of the train in question. *See* Waagner Compl. at ¶¶ 13, 25. Plaintiffs further allege that WBBB is a holding company that is the 100% owner of WBB and WBH. *See id.* at ¶ 14. According to plaintiffs, the Waagner defendants are operated and controlled by WBBB "as a single enterprise . . . without regard to the separate corporate identities or fiscal integrity of each," and are therefore mere instrumentalities of WBBB. *Id.* at ¶ 17. Moreover, plaintiffs contend that in 2001,

WBBB drained the assets of WBB with full knowledge that it would not be able to pay a judgment to plaintiffs or members of the plaintiff class. *Id.*

Taking the plaintiffs' claims as true, as this Court must, the plaintiffs have stated a claim against defendants WBB, WBH, and Binder. Plaintiffs have alleged that the Waagner defendants acted as a single enterprise and that a failure to hold them responsible for the actions of WBB would create an inequitable result. Moreover, plaintiffs have alleged specific manipulative conduct (*i.e.*, draining the assets of WBB to avoid paying a judgment to plaintiffs) on the part of the corporate parent. These allegations are sufficient to give notice to the defendants of the purported basis for liability, and thus to survive a motion to dismiss.

## VII. CONCLUSION

Because this Court has no personal jurisdiction over the Waagner defendants and the interests of justice require transfer, this action is to be immediately transferred to the District of Colorado and then transferred back to this Court by the MDL Panel.[33] Jurisdictional discovery regarding the Waagner defendants' Colorado-based contacts is to begin forthwith. A conference is scheduled for Wednesday, May 7, 2003 at 4:30 p.m.

---

**33.** The MDL Panel has already determined that all cases related to the ski train accident in Kaprun, Austria are to be transferred to this Court.