## In re SKI TRAIN FIRE IN KAPRUN, AUSTRIA ON NOVEMBER 11, 2000

**This Document Relates to: Defendant Siemens Corp.**

No. MDL NO. 1428(SAS). 03 civ. 5324.

United States District Court, S.D. New York.

March 15, 2004.

---

Brian J. Benner, Nancy Savageau, Bil-icki & Remick, Farmington Hills, MI, for plaintiff.

Thomas D. Yannucci, Christopher Landau, Brant W. Bishop, Kirkland & Ellis LLP, Washington, DC, David S. Coale, Carrington, Coleman, Sloman & Blumenthal LLP, Dallas, TX, for Defendant.

### OPINION AND ORDER

SCHEINDLIN, District Judge.

Karen Filkil, whose husband and son died in a ski train fire on November 11, 2000, in Kaprun, Austria, brings this action against numerous defendants.[1] Defendant Siemens Corporation ("Siemens Corp.") now moves to dismiss this action against it on the following grounds: (1) lack of personal jurisdiction, (2) failure to state a claim, (3) failure to comply with the relevant statutes of limitations, and (4) forum non conveniens.[2] For the reasons set forth below, Siemens Corp.'s motion to dismiss for lack of personal jurisdiction is granted.[3]

## I. FACTUAL BACKGROUND

### A. The Moving Defendant

Siemens Corp. is a U.S. corporation with its principal place of business in New York, New York. See Plaintiff's First Amended Complaint ("Complaint") ¶ 8. Siemens Corp. is alleged to have "designed, manufactured, constructed, sup-plied, modified and installed the electrical, communications, control and safety-related systems and components for use on the train and tunnel." Id. ¶ 40.

### B. Jurisdictional Allegations

Filkil argues that this Court has jurisdiction over Siemens Corp. based on its direct contacts with Texas, i.e., its filing of a "Texas Franchise Tax Public Information Report" ("Tax Report") and online employee recruitment. In the alternative, she contends that Siemens Corp. does business in Texas through its parent, subsidiary, and affiliates. See Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss ("Pl.Opp.") at 3–9.

#### 1. Direct Contacts

#### a. Tax Report

Filkil alleges that Siemens Corp. filed a "Texas Franchise Tax Public Information Report dated November 22, 2003." See Pl. Opp. at 7–8. The Tax Report covers the period from October 1, 2001 through September 30, 2002. See Tax Report, Ex. 1 to 1/7/04 Declaration of Brant W. Bishop, Counsel for Siemens Corp. ("Bishop Dec."). Notably, the report indicates that Siemens Corp. reported no gross receipts, taxable capital, or tax liability in Texas. Id.

#### b. Website

Filkil avers that the "Siemens USA web-site allows Texas residents to apply online

---

1. The Judicial Panel on Multidistrict Litigation ("MDL Panel") consolidated this and other similar suits for pretrial purposes before this Court. See In re Ski Train Fire in Kaprun, Austria on November 11, 2000, 175 F.Supp.2d 1379 (Jud.Pan.Multi.Lit.2001). This action, which was filed after the original civil actions were consolidated, was transferred to this Court as a "tag-along action" in July of 2003. See Conditional Transfer Order Regarding Filkil v. Omniglow, No. 03 Civ. 0258 (E.D.Tex.).

2. Siemens Corp. also moves to dismiss the fraud claim for failure to plead with particularity.

3. Because I grant Siemens Corp.'s motion to dismiss for lack of personal jurisdiction, I do not consider Siemens Corp.'s alternative grounds for dismissal.

for jobs within the Siemens Corporation (*see* siemens.usa.com careers [4])." Pl. Opp. at 8. The website allows Internet users to search Siemens Corp.'s job listings and submit resumes for available positions, and is not restricted to particular states. *See* h ttp://careers.peopleclick.com /Client40_Siemens/bul/external_pages/jobsearch.asp (last visited March 3, 2004).[5]

### 3. Indirect Contacts

Filkil also alleges jurisdiction over Siemens Corp. based on the Texas contacts of its parent company (Siemens AG), subsidiary (Siemens Fund), and affiliates.

### a. Siemens AG

Filkil asserts that Siemens AG has "admitted to a presence in all 50 states." Pl. Opp. at 8–9. Not surprisingly, Siemens Corp. denies that its parent made such a concession, but admits to the existence of online information describing the members of the "Siemens family of corporation[s]" as having employees spanning the fifty states. *See* Defendant's Reply Brief in Support of the Motion to Dismiss ("Reply") at 6 n. 1.

### b. Siemens Fund

Filkil avers that Siemens Fund "provides funding to large universities in Texas such as Texas A & M." Pl. Opp. at 8. Neither party has provided any information tending to prove or disprove this statement.

### c. Siemens Corp.'s Affiliates

Filkil identifies four Siemens affiliates whose activities in Texas purportedly link Siemens Corp. to the forum. *First*, Filkil alleges that Siemens Transportation Systems, a Siemens Corp. affiliate, has "recently contracted for $120 million to build [a] light rail in Houston, Texas." *See* Pl. Opp. at 9 (citing John Biundo, *The MET-RO Money Train*, Houston Rev., Mar. 11, 2004, http://www.houstonreview.com/1003/metromoney.htm.).

*Second*, Filkil produces the Texas Secretary of State Identification Numbers for three "active" corporations allegedly known as "Siemens Corporation" that are registered to do business in Texas. *Id.* at 6. Each of these "Siemens Corporations" purportedly has a Texas address, although "the publicly available information does not establish how long Siemens has been active at these Texas addresses." *See id.* at 6–7.[6] Siemens Corp. concedes that those companies are its affiliates, but notes that they are not, as Filkil asserts, known as "Siemens Corporation." Rather these companies file as: (1) Siemens Energy & Automation, Inc.; (2) Siemens Medical Solutions USA, Inc.; and (3) Electrocom Automation. Reply at 4. These affiliates only reference Siemens Corp. in connection with the Iselin, New Jersey corporate addresses provided in their documentation. *See id.*; SOS Direct Results, Exs. 1–3 to Coale Dec. Although Siemens Corp. was registered to conduct business in Texas,

---

**4.** This Internet address is invalid, but presumably Filkil intended to cite to http://www.usa.siemens.com.

**5.** The link from Siemens Corp.'s main page to its career information pages leads to an external domain. It appears from this address and web pages that an outside company, Peopleclick, administers Siemens Corp.'s job listings and applications.

**6.** Because Filkil failed to attach printouts from the Internet database of the Texas Secretary of State, to which access is restricted, I rely on the documents submitted by Siemens Corp. *See* Texas Secretary of State Business Organizations Inquiry Result ("SOS Direct Result"), Exs. 1–3 to 1/7/04 Declaration of David S. Coale, Counsel for Siemens Corp. ("Coale Dec.").

this status was forfeited in 1966 and withdrawn in 1989. *See* Coale Dec. ¶ 7; SOS Direct Result, Ex. 4 to Coale Dec.

## II. APPLICABLE LAW

### A. Legal Standard

■ "Personal jurisdiction ... represents a restriction on judicial power as a matter of individual liberty." *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999) (quotations and citation omitted). A court is obligated to dismiss an action against a defendant over which it has no personal jurisdiction. *See* Fed.R.Civ.P. 12(b)(2); *see also In re Ski Train Fire in Kaprun, Austria on November 11, 2000 (Siemens Austria)*, 230 F.Supp.2d 403, 406 (S.D.N.Y. 2002). Plaintiffs bear the ultimate burden of establishing, by a preponderance of the evidence, that the court has jurisdiction over the defendant. *See Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 240 (2d Cir. 1999). However, "[p]rior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith ... legally sufficient allegations of jurisdiction, i.e., by making a *prima facie* showing of jurisdiction." *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 184 (2d Cir.1998) (quotations and citation omitted); *see also Koehler v. Bank of Bermuda, Ltd.*, 101 F.3d 863, 865 (2d Cir.1996). Plaintiff "can make this showing through [her] own affidavits and supporting materials, containing an averment of facts that, if credited ... would suffice to establish jurisdiction over the defendant." *Whitaker v. American Telecasting Inc.*, 261 F.3d 196, 208 (2d Cir.2001) (quotations and citations omitted). Thus, a court may consider materials outside the pleadings, but must credit the plaintiff's averments of jurisdictional facts as true. *See Hsin Ten Enter. USA, Inc. v. Clark Enter.*, 138 F.Supp.2d 449, 452 (S.D.N.Y.2000); *Metro-*

*politan Life Ins. Co. v. Robertson–Ceco Corp.*, 84 F.3d 560, 567 (2d Cir.1996).

■ The determination of whether a federal court has personal jurisdiction over a defendant is a two-step process. *First,* the court must determine whether the plaintiff has shown that the defendant is subject to personal jurisdiction under the forum state's laws. *Met Life,* 84 F.3d at 567. *Second,* the court must evaluate whether its assertion of jurisdiction pursuant to the forum state's laws comports with the requirements of due process. *Id.* In an MDL proceeding, the forum state is "the district court where the action was originally filed, and therefore that state's law must be applied." *In re Ski Train Fire In Kaprun, Austria on November 11, 2000 (Waagner-Biro),* 257 F.Supp.2d 717, 723 (S.D.N.Y.2003). "[A] transferee court can exercise personal jurisdiction only to the same extent as the transferor court could." *In re Sterling Foster & Co. Sec. Litig.,* 222 F.Supp.2d 289, 300 (E.D.N.Y. 2002) (citing *In re Agent Orange Prod. Liab. Litig.,* 818 F.2d 145, 163 (2d Cir. 1987)). Because this suit was originally filed in the Eastern District of Texas, Texas law governs the question of whether a Texas court would have personal jurisdiction over Siemens Corp.

### B. Personal Jurisdiction in Texas

#### 1. General Principles

Texas's long-arm statute has been interpreted as providing for jurisdiction to the extent permitted by the Constitution. *See Electrosource, Inc. v. Horizon Battery Techs., Ltd.,* 176 F.3d 867, 871 (5th Cir. 1999) (citing *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990)). Thus, the sole question is whether the exercise of personal jurisdiction in Texas would offend the Due Process Clause of the Fourteenth Amendment. *See id.*

■■■ Under the Due Process Clause, personal jurisdiction exists over a defendant "when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Latshaw v. Johnston,* 167 F.3d 208, 211 (5th Cir.1999) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The "minimum contacts" between a defendant and the forum state may give rise to either "specific jurisdiction" or "general jurisdiction." *Mink v. AAAA Dev. LLC,* 190 F.3d 333, 336 (5th Cir.1999). "Specific jurisdiction arises when the defendant's contacts with the forum arise from, or are directly related to, the cause of action." *Revell v. Lidov,* 317 F.3d 467, 470 (5th Cir.2002) (quotations and citation omitted). By contrast, "[g]eneral jurisdiction exists when a defendant's contacts with the forum state are unrelated to the cause of action but are 'continuous and systematic.'" *Id.* The Fifth Circuit has added the requirement that the contacts be "substantial" as well as "continuous and systematic." *See Religious Tech. Ctr. v. Liebreich,* 339 F.3d 369, 374 (5th Cir.2003); *Revell,* 317 F.3d at 471.

### 2. Jurisdiction Based on Websites

"Courts addressing the issue of whether personal jurisdiction can be constitutionally exercised over a defendant look to the 'nature and quality of commercial activity that an entity conducts over the Internet.'" *Mink,* 190 F.3d at 336 (quoting *Zippo Mfg. Co. v. Zippo Dot Com,* 952 F.Supp. 1119, 1124 (W.D.Pa.1997)). In analyzing websites, courts use a "sliding scale" approach. *Revell,* 317 F.3d at 470. A "passive" website, one that merely allows the owner to post information over the internet, is at one end of the scale. It will not be sufficient to establish jurisdiction. At the other end are sites whose owners engage in repeated online contacts with the forum residents over the internet, and in those cases personal jurisdiction may be proper. In between are those sites with some interactive elements, through which a site allows for bilateral information exchange with its visitors. Here, we find more familiar terrain, requiring that we examine the extent of interactivity and the nature of the forum contacts.

*Id.* The Fifth Circuit, in *Revell,* additionally cautioned that the sliding scale approach "is not well adapted to the general jurisdiction inquiry, because even repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous, and systematic contacts required...." *Id.* at 471.

### 3. Jurisdiction Based on Corporate Relationships

"Texas law presumes that two separate corporations are indeed distinct entities.... To 'fuse' the parent company and its subsidiary for jurisdictional purposes, the plaintiffs must prove that the parent controls the internal business operations and affairs of the subsidiary." *BMC Software Belg., N.V. v. Marchand,* 83 S.W.3d 789, 799 (Tex.2002) (citing *Conner v. ContiCarriers & Terminals, Inc.,* 944 S.W.2d 405, 418–19 (Tex.App.1997)). Furthermore, "the evidence must show that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice." *Id.* Evidence such as "100% stock ownership and commonality of officers and directors are not alone sufficient to establish an alter ego relationship between two corporations." *Hargrave v. Fibreboard Corp.,* 710 F.2d 1154, 1160 (5th Cir.1983) (citing

*Walker v. Newgent,* 583 F.2d 163, 167 (5th Cir.1978)); *see also BMC Software,* 83 S.W.3d at 799.

## III. DISCUSSION

### A. Ripeness

As an initial matter, Filkil argues that the motion to dismiss for lack of personal jurisdiction is not ripe for decision. *See* Pl. Opp. at 4–5. Filkil asserts that because she has opted into a class action on the issue of liability, and because the case will only be transferred back to the Eastern District of Texas if liability is found, the issue of personal jurisdiction in Texas is not ripe. *Id.* However, as discussed earlier, this Court only has personal jurisdiction to the extent that it exists in Texas. The Supreme Court has clearly stated that "[t]he requirement that jurisdiction be established as a threshold matter . . . is inflexible and without exception." *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) (quotations and citation omitted). "Personal jurisdiction . . . is an essential element of the jurisdiction . . . without which the court is powerless to proceed to an adjudication." *Marathon Oil Co.,* 526 U.S. at 583, 119 S.Ct. 1563 (quotations and citation omitted). Once a court has found jurisdiction is lacking, "the only function remaining to the court is that of announcing that fact and dismissing the case." *Steel Co.,* 523 U.S. at 94, 118 S.Ct. 1003. Thus, this Court cannot avoid deciding the Rule 12(b)(2) motion based on a claim that the issue is not yet ripe.

### B. Personal Jurisdiction

Because her claims do not arise from Siemens Corp.'s contacts with Texas, Filkil concedes that there is no specific jurisdiction over Siemens Corp. *See* Pl. Opp. at 6 n. 2. Accordingly, she must allege facts that, if true, would justify the exercise of general jurisdiction over Siemens Corp. in Texas. Specifically, she must aver facts sufficient to establish a prima facie showing Siemens Corp. has substantial, continuous, and systematic contacts with Texas.

### 1. Direct Contacts

#### a. Siemens Corp.'s Franchise Tax Report

 Filkil argues that the filing of the Tax Report is evidence that Siemens Corp. conducts business in Texas. *See* Pl. Opp. at 7–8. But the Siemens Corp. Tax Report reflects zero gross receipts, taxable capital, or tax liability in Texas. *Id.* Accordingly, it fails to establish any contacts between Siemens Corp. and Texas and further suggests that Siemens Corp. *lacks* continuous and systematic contacts with Texas.

#### b. Siemens's Website Activity

 Filkil alleges that Siemens Corp.'s online employment recruitment constitutes a basis for the exercise of general jurisdiction. *See* Pl. Opp. at 8. Under the framework set forth in *Mink,* Siemens Corp.'s website appears to fall in the middle spectrum of interactivity, as it permits Internet users to transmit information online to Siemens Corp. *See* 190 F.3d at 336. In this "middle ground," a court's jurisdictional inquiry is guided by the commercial nature of the information exchanged and the degree to which the website is interactive. *Id.* Filkil makes no allegations that Siemens Corp. conducted business over the Internet by entering into contracts or otherwise engaging in business transactions with Texas residents. Nor does she suggest that the website permits consumers to order or purchase products and services online. The website merely permits users to (1) search a nationwide employment database and (2) submit their resumes and

cover letters electronically. Because Filkil's allegations regarding the Siemens website do not demonstrate that Siemens Corp. does business over the Internet or interacts with Texas residents, the exercise of personal jurisdiction over Siemens Corp. based on its website activity is inappropriate.[7]

## 2. Indirect Contacts

Filkil also seeks to establish jurisdiction over Siemens Corp. in Texas through the contacts of its parent company, a subsidiary, and affiliates.

### a. Siemens AG

■ Filkil argues that Siemens Corp. is subject to jurisdiction in Texas by virtue of the alleged "presence" of its parent company, Siemens AG, in Texas. But Filkil's argument fails for at least two reasons. *First*, the mere allegation of "presence," without additional explanation fails to establish that Siemens AG itself has substantial, continuous, and systematic contacts in Texas. *Second*, even assuming, *arguendo*, that Siemens AG is doing business in Texas, Filkil does not adequately allege that Siemens AG exerts such dominance and control over Siemens Corp. that the two companies should be deemed the same corporation for purposes of jurisdiction. Indeed, Filkil fails to suggest that Siemens AG influences, much less controls, the business affairs of Siemens Corp. As such, Siemens Corp. cannot be deemed to be Siemens AG's alter ego.

### b. Siemens Fund

■ In a single, unsubstantiated sentence in her memorandum of law, Filkil

alleges that Siemens Fund "provides funding to large universities in Texas." Pl. Opp. at 8. She argues that this is sufficient to support a finding of jurisdiction over Siemens Corp. This argument lacks merit for several reasons. *First*, Filkil does not allege facts as to the timing, frequency, or amount of the donations. The act of "provid[ing] funding," *id.*, without more, cannot support a finding of general jurisdiction. *Second*, even if Filkil had sufficiently alleged that Siemens Fund has significant contacts with Texas, she fails to demonstrate that Siemens Corp. controls the business operations of the Siemens Fund. She offers no reason for this Court to disregard the presumption that Siemens Corp. and Siemens Fund are two separate corporate entities. As such, there is no basis for ascribing Siemens Fund's purported contacts to its parent company, Siemens Corp.

### c. Siemens Corp.'s Affiliates

■ Filkil argues that the contacts of the Siemens affiliates in Texas should be attributed to Siemens Corp. for jurisdictional purposes. Here too, her argument fails. *First*, Filkil's vague allegations that Siemens Transportation Systems has entered into a contract to build a light rail in Texas are insufficient to establish its continuous presence in Texas. Even if the contract could serve as a basis for general jurisdiction over Siemens Transportation Systems, Filkil alleges no facts suggesting that Siemens Corp. has control over or is controlled by this affiliate. Filkil thus fails to offer any basis upon which to conflate

---

**7.** Notably, although the website is accessible to users in Texas, Filkil does not aver that Texas residents actually used it. Her jurisdictional argument is thus premised on a single feature on a Siemens website that *might* have been used to engage in contacts with Texas. *See* Pl. Opp. at 8. Absent any allegation that Texas residents used the website, the operation of the website alone cannot demonstrate continuous and systematic contacts between Siemens Corp. and Texas.

the two companies for jurisdictional purposes.

■ *Second,* with respect to Siemens Energy & Automation, Inc.; Siemens Medical Solutions USA, Inc.; and Electrocom Automation, Filkil fails to allege facts tending to suggest that any of these entities conduct business in Texas. Moreover, even if they do conduct business in Texas, their status as Siemens affiliates does not rebut the presumption that they are separate corporate entities, distinct from Siemens Corp. As with her allegations regarding Siemens AG and Siemens Fund, Filkil fails to provide any reason to disregard the formal distinction between the affiliates and Siemens Corp. Accordingly, Filkil has provided no basis upon which to impute these affiliates' Texas contacts to Siemens Corp. for purposes of testing jurisdiction.

## C. Jurisdictional Discovery

■ Filkil argues that she is entitled to jurisdictional discovery prior to dismissal. *See* Pl. Opp. at 5–6. The availability of such discovery is an issue of federal procedural law, requiring the application of Second Circuit precedents.[8] The Second Circuit has generally refused to allow jurisdictional discovery where a plaintiff has failed to make a *prima facie*

showing of personal jurisdiction. *See Jazini,* 148 F.3d at 185–86.[9] Additionally, it is unlikely that discovery will yield any useful information. Defendant has no revenue or capital in Texas and its business status in Texas has been forfeited and withdrawn. Filkil has pointed to no evidence even suggesting direct control by Siemens Corp. over its affiliates. Because Filkil has failed to aver facts sufficient to establish a *prima facie* showing of jurisdiction, her request for jurisdictional discovery is denied.

## E. Summary of Personal Jurisdiction Issues

In sum, whether jurisdiction over Siemens Corp. can be properly asserted is "ripe" for decision. Filkil has failed to make the required *prima facie* showing that Siemens Corp. has the required substantial, continuous, and systematic contacts with Texas. Accordingly, there is no basis upon which this Court can exercise general jurisdiction,[10] nor is jurisdictional discovery warranted.

## IV. CONCLUSION

For the foregoing reasons, Siemens Corp.'s motion to dismiss for lack of personal jurisdiction is granted. The Clerk of the Court is directed to close this motion

---

8. "A transferee federal court should apply its interpretations of federal law, not the constructions of the transferor circuit." *Menowitz v. Brown,* 991 F.2d 36, 40 (2d Cir.1993). "[N]o litigant has a right to have the interpretation of one federal court rather than that of another determine [her] case." *H.L. Green Co. v. MacMahon,* 312 F.2d 650, 652 (2d Cir.1962). This principle applies to federal procedural law as well as substantive law. *See Northwestern Mut. Life Ins. Co. v. Banc of Am. Sec., LLC,* 254 F.Supp.2d 390, 396–97 (S.D.N.Y.2003)· (applying Second Circuit precedents addressing pleading requirements under Rule 9 in a diversity action). Because discovery is unquestionably an issue of federal procedural law, the resolution of discovery

issues is governed by the law of the Second Circuit.

9. Notably, in *Jazini,* the plaintiff was denied jurisdictional discovery for failing to make *specific* allegations that a subsidiary was controlled by the parent. *See Jazini,* 148 F.3d at 184–85. Here, Filkil has not made *any* allegation of control.

10. Therefore, I need not consider whether jurisdiction would offend "traditional notions of fair play and substantial justice." *Latshaw,* 167 F.3d at 211 (quoting *International Shoe,* 326 U.S. at 316, 66 S.Ct. 154).

218

[docket #4] and dismiss Filkil's suit against Siemens Corp.

SO ORDERED.