**In re SKI TRAIN FIRE IN KAPRUN, AUSTRIA ON NOVEMBER 11, 2000**

**This Document Relates To: Defendants Waagner–Biro Binder AG, Waagner–Biro Binder Beteiligungs AG, WB Holding AG, Binder + Co AG.**

**MDL No. 1428(SAS).**
**No. 03 Civ.6351.**

United States District Court,
S.D. New York.

Oct. 8, 2004.

Jay J. Rice, Randee M. Matloff, Nagel Rice & Mazie, LLP, Livingston, NJ, Robert A. Swift, Hilary Cohen, Kohn, Swift & Graf, P.C., Philadelphia, PA, Ken Nolan, Christina M. Fry, Speiser, Krause, Nolan & Granito, New York, NY, Edward D. Fagan, New York, N.Y. and Short Hills, NJ, Michael Witti, Witti, Newmann & Partners, for Plaintiffs.

Frederick W. Reif, Debra Tamra, Riker, Danzig, Scherer, Hyland & Perretti LLP, New York, NY, for Defendants.

### *OPINION AND ORDER*

SCHEINDLIN, District Judge.

Plaintiffs, the relatives of Americans who died in a ski train fire on November 11, 2000, in Kaprun, Austria, brought several individual actions against numerous individual and corporate defendants for damages and declaratory and injunctive relief. The Judicial Panel on Multidistrict Litigation ("MDL Panel") consolidated these suits for pretrial purposes before this Court.[1] Defendants Binder AG in Abwicklung (as successor in interest to Waagner–Biro Binder Aktiengesellschaft and Waagner–Biro AG) (collectively, "WBB"), Waagner–Biro Binder Beteiligungs AG ("WBBB"), WB Holding AG ("WBH") and Binder + Co AG ("Binder") (collectively, "the Waagner defendants") now move to dismiss for lack of personal jurisdiction and forum non conveniens. For the reasons set forth below, the Waagner defendants' motion to dismiss for lack of personal jurisdiction is granted.[2]

## I. BACKGROUND

### A. The Moving Defendants

WBB is an Austrian corporation located in Linz, Austria with administrative headquarters in Vienna, Austria.[3] Plaintiffs allege that WBB designed, engineered, and manufactured major parts of the ski train at issue in this litigation.[4]

---

1. *See In re Ski Train Fire in Kaprun, Austria on November 11, 2000,* 175 F.Supp.2d 1379 (J.P.M.L.2001).

2. Because the motion to dismiss based on lack of personal jurisdiction is granted, I need not address forum non conveniens.

3. *See* 5/19/04 Declaration of Dr. Christoph Nemeth, Director of the Legal Department of WBB ("Nemeth Dec."), Ex. D to 6/10/04 Declaration of Frederick W. Reif, counsel for Waagner defendants ("Reif Dec."), ¶ 3.

4. *See* 9/30/02 Plaintiffs' First Amended Waagner Complaint as to Waagner Defendants ("Waagner Compl."), Ex. B to Reif Dec., ¶ 13.

WBBB is an Austrian corporation located in Vienna, Austria.[5] Founded on June 30, 2001, WBBB is a holding company that acquires majority interests in other companies; it conducts no active operations of any kind.[6]

WBH is also an Austrian holding company located in Vienna, Austria.[7] Although WBH's primary business is the ownership of majority interests in other companies, it also provides consulting services to its subsidiary companies.[8]

Binder is an Austrian corporation located in Gleisdorf, Austria.[9] Binder was founded on September 28, 1999, and is in the business of developing and manufacturing environmental, reprocessing, and packaging technology.[10] Binder is a 99.997% owned subsidiary of WBH.[11]

### B. Procedural History

On or about June 27, 2001, plaintiffs filed a complaint against WBB in the United States District Court for the Central District of California.[12] The action was subsequently transferred to this Court by the MDL Panel on November 19, 2001.[13]

On or about December 21, 2001, plaintiffs filed a Consolidated and Amended Complaint ("Amended Complaint") against WBB and other defendants.[14] With this Court's permission, plaintiffs further amended the Amended Complaint to name three additional Waagner entities as defendants.[15] Subsequently, the Waagner defendants moved to dismiss on a number of grounds, including lack of personal jurisdiction.[16] This Court granted that motion to dismiss for lack of personal jurisdiction in California, transferred the case to the District of Colorado, and ordered jurisdictional discovery concerning the Waagner defendants' Colorado-based contacts.[17] The MDL then transferred this action back to this Court.[18]

## II. PERSONAL JURISDICTION

Plaintiffs argue that the Waagner defendants' contacts with Colorado are sufficient to confer jurisdiction over defendants. Plaintiffs admit, however, that "the principal basis for establishing jurisdiction over the Waagner defendants is through agency/alter ego."[19] Thus, plaintiffs contend that this Court may exercise jurisdic-

---

5. *See* 5/19/04 Declaration of Magistrate Helmut Wurzinger, member of the Executive Board of WBBB ("Wurzinger Dec."), Ex. F to Reif Dec., ¶ 1.

6. *See id.* ¶ 2. Plaintiffs allege that WBBB owns 100% of WBB and WBH. *See* Plaintiffs' Brief in Opposition to Waagner Defendants' Motion to Dismiss ("Pl.Opp.") at 24 (citing D & B Business Reports, Waagner Biro Holding AG AUT, Ex. 20 to 11/25/02 Declaration of Hilary Cohen ("Cohen Dec.")).

7. *See* 5/24/04 Declaration of Magistrate Martin Mayerhoffer, Corporate Comptroller of WBH ("Mayerhoffer Dec."), Ex. E to Reif Dec., ¶¶ 1, 3.

8. *See id.* ¶ 2.

9. *See* 5/28/04 Declaration of Karl Grabner, General Manager for Binder ("Grabner Dec."), Ex. G to Reif Dec., ¶ 1.

10. *See id.* ¶ 4.

11. *See id.* ¶ 5.

12. *See* 6/27/01 Complaint in the Central District of California ("Calif.Compl."), Ex. A to Reif Dec.

13. *See* Reif Dec. ¶ 5.

14. *See* Waagner Complaint.

15. *See* Reif Dec. ¶ 6.

16. *See id.* ¶ 7.

17. *In re Ski Train Fire in Kaprun, Austria on November 11, 2000*, 257 F.Supp.2d 717, 733—34 (S.D.N.Y.2003).

18. *Id.* at 736 n. 33.

19. Pl. Opp. at 17.

tion over the Waagner defendants through Binder subsidiary Packaging Systems International ("PSI"), a Colorado-based manufacturer of industrial packaging equipment, because PSI is the agent of defendants. Finally, plaintiffs argue that the Waagner defendants operate as alter egos of each other, and that this Court should ignore the corporate form and find jurisdiction over defendants through PSI.

## A. LEGAL STANDARD

In an MDL proceeding, "the forum state is the district court where the action was originally filed, and therefore that state's law must be applied."[20] Although this action was originally filed in the Central District of California, it was transferred to the District of Colorado due to lack of personal jurisdiction in California.[21] When a suit is transferred for lack of personal jurisdiction in the forum state of the transferor, the law of the transferee jurisdiction applies.[22] Thus, this Court must apply Colorado law to determine whether a Colorado court would have personal jurisdiction over defendants.[23]

Plaintiffs bear the burden of establishing personal jurisdiction over the defendants.[24] "Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing."[25] Any conflicts that exist in the pleadings, affidavits, and other materials must be resolved in favor of plaintiffs in determining whether a prima facie showing of personal jurisdiction has been made.[26]

In transferring this action from the Central District of California to the District of Colorado, this Court stated that plaintiffs made an "initial showing that there may be personal jurisdiction over at least some of the Waagner defendants in Colorado," and ordered jurisdictional discovery concerning defendants' Colorado contacts.[27] Plaintiffs argue that they are entitled to additional jurisdictional discovery in order to establish a prima facie case of jurisdiction.[28] However, Second Circuit precedent is clear that plaintiffs, having failed to demonstrate a prima facie case of jurisdiction, are not entitled to further jurisdictional discovery.[29]

**20.** *In re Ski Train Fire in Kaprun, Austria on November 11, 2000,* No. 03 Civ. 5324, 2004 WL 515534 at *3 (S.D.N.Y. Mar.15, 2004) (quotation marks omitted).

**21.** *In re Ski Train Fire,* 257 F.Supp.2d at 736.

**22.** *See SongByrd, Inc. v. Estate of Grossman,* 206 F.3d 172, 179—80 (2d Cir.2000); *Levy v. Pyramid Co. of Ithaca,* 871 F.2d 9, 10 (2d Cir.1989).

**23.** *See In re Ski Train Fire,* 2004 WL 515534, at *3 ("A transferee court can exercise personal jurisdiction only to the same extent as the transferor court could.") (quoting *In re Sterling Foster & Co. Sec. Litig.,* 222 F.Supp.2d 289, 300 (E.D.N.Y.2002)).

**24.** *See Behagen v. Amateur Basketball Ass'n,* 744 F.2d 731, 733 (10th Cir.1984).

**25.** *Id.*

**26.** *See Colcord v. Armstrong World Indus., Inc.,* Civ. A. No. 84–JM–912, 1985 WL 17481, at *1 (D.Colo. May 13, 1985).

**27.** *In re Ski Train Fire,* 257 F.Supp.2d at 734–36.

**28.** *See* Pl. Opp. at 7–8.

**29.** *See Jazini v. Nissan Motor Co.,* 148 F.3d 181, 186 (2d Cir.1998) (stating that district court did not err in denying jurisdictional discovery where plaintiff failed to establish a prima facie case of jurisdiction).

The extent and timing of discovery is an issue of federal law, to which the transferee court applies the law of the circuit in which it sits. *See Menowitz v. Brown,* 991 F.2d 36, 40–41 (2d Cir.1993) ("We have previously held that a transferee federal court should apply its interpretations of federal law, not the constructions of federal law of the transferor circuit.... Although federal courts sometimes arrive at different constructions of federal law, federal law (unlike state law) is supposed

## B. Colorado Law on Personal Jurisdiction

■ To establish jurisdiction in a diversity action in federal court, plaintiffs must show both that jurisdiction is proper under the long-arm statute of the forum state and that the exercise of personal jurisdiction over defendants comports with due process principles of the United States Constitution.[30]

Colorado courts have determined that the state's long-arm statute authorizes jurisdiction "to the fullest extent permitted by the due process clause of the United States Constitution."[31] Thus, the sole inquiry for this Court is whether personal jurisdiction over the defendants accords with constitutional principles of due process.

■ Under the Due Process Clause of the Fourteenth Amendment, for a court to exercise personal jurisdiction over a nonresident corporate defendant, that defendant must have "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."[32] A court may exercise "specific jurisdiction" over a defendant who has "purposefully directed his activities at residents of the forum" when "the alleged injuries arise out of or relate to those activities."[33] "Even a single act can sometimes support specific jurisdiction."[34]

■ When the alleged injuries do not arise out of or relate to defendants' contacts with the forum, a court may exercise "general jurisdiction" over a defendant provided that "continuous and systematic general business contacts" exist between the defendant and the forum state.[35] "Generally speaking, the more tenuous the connection between the cause of action sued upon and the defendant's activities in the forum state, the more substantial the defendant's contacts with the forum state must be to render the assertion of jurisdiction reasonable."[36] Thus, while " 'a minimum of contacts' " is usually sufficient to support specific jurisdiction, an exercise of general jurisdiction requires " 'substantial contacts with the state.' "[37] In evaluating the sufficiency of a corporation's contacts with the forum state, courts consider such factors as whether the corporation maintains a local office or agents through which it solicits business, the extent to which it holds itself out as doing business in the

to be unitary.... [Moreover, it] would be unwieldy, if not impossible, for a federal court to apply differing rules of federal law to various related cases consolidated before it.").

**30.** *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 413, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

**31.** *Waterval v. District Court,* 620 P.2d 5, 8 (Colo.1980), *cert. denied,* 452 U.S. 960, 101 S.Ct. 3108, 69 L.Ed.2d 971 (1981).

**32.** *Helicopteros Nacionales de Colombia,* 466 U.S. at 414, 104 S.Ct. 1868 (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

**33.** *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quotation marks omitted).

**34.** *Keefe v. Kirschenbaum & Kirschenbaum, P.C.,* 40 P.3d 1267, 1271 (Colo.2002) (citing *McGee v. International Life Ins. Co.,* 355 U.S. 220, 222–23, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957)).

**35.** *Helicopteros Nacionales de Colombia,* 466 U.S. at 412, 104 S.Ct. 1868.

**36.** *Le Manufacture Francaise Des Pneumatiques Michelin v. District Court,* 620 P.2d 1040, 1047 (Colo.1980).

**37.** *Waterval,* 620 P.2d at 9 (quoting 2 James Wm. Moore, et al., Moore's Federal Practice ¶ 4.25(5) (2d ed.1980)).

forum state through advertising, listings, or bank accounts, and the volume of business the corporation conducts in the forum state.[38]

## C. Discussion

### 1. Defendants' Direct Contacts with Colorado

Plaintiffs argue that the Waagner defendants' own contacts with Colorado, independent of the presence of Binder subsidiary PSI, are sufficient to demonstrate that defendants purposefully availed themselves of the privilege of conducting business in the state of Colorado.[39] In support of this contention, plaintiffs offer the following jurisdictional allegations with respect to defendant Binder. Two officials serving on "the Executive Board of Binder and PSI" took twenty-seven trips to Colorado between October 2000 and October 2003.[40] Binder's website lists at least forty-eight deliveries of Binder products to the United States between 1998 and 2003.[41] Binder sells packaging machines under the PSI name in the United States.[42]

With respect to defendant WBB, plaintiffs' sole allegation of direct contact between the defendant and the forum state is that WBB sold over $52,000 worth of goods to PSI between June and September 2001.[43]

■ The direct contacts plaintiff enumerates between defendants and the forum state are clearly insufficient to establish the "continuous and systematic general business contacts" necessary to exercise general jurisdiction consistent with the principles of due process.[44] Plaintiffs make no allegation that the trips to Colorado by Mr. Jörg Rosegger and Mr. Karl Grabner, who served on the boards of both PSI and Binder, were made to conduct the business of Binder rather than of PSI.[45] Furthermore, occasional and apparently random visits to a forum state by officers of a foreign corporation are insufficient to establish general jurisdiction.[46] Plaintiffs do not allege that any of the Binder products were delivered to Colorado.[47] Vague allegations of United States deliveries are plainly insufficient to confer jurisdiction on Colorado courts.[48] Even if these products were

38. *See Kuenzle v. HTM Sport–Und Freizeitgerate AG*, 102 F.3d 453, 457 (10th Cir.1996).

39. *See* Pl. Opp. at 17.

40. *See* Chart of Dates of Travel to Colorado by Mr. Grabner and Mr. Rosegger, Ex. 11 to 8/13/04 Declaration of Jay J. Rice, counsel for plaintiffs ("Rice Dec.").

41. *See* Reference List of United States Deliveries, http://www .binderco.com/index_referenzen.php?sprache=en ("Delivery List"), Ex. 12 to Rice Dec.

42. *See* Binder Worldwide page of Binder's website, *at* http://www.binder-co.com/index_en_1_2_2 __.html, ("Binder Worldwide"), Ex. 7 to Rice Dec.

43. *See* 6/21/01 WBB Invoice No. AR010364; 7/6/01 WBB Invoice No. AR010434; 9/12/01 WBB Invoice No. AR010590; 8/9/01 WBB Invoice No. AR010534, Ex. 10 to Rice Dec.

44. It is worth noting that twenty of the twenty-seven visits by corporate officers, several of

the forty-eight United States deliveries, and three of the four WBB invoices occurred after the complaint was filed on June 27, 2001, and are thus irrelevant for determining personal jurisdiction. *See United Phosphorous, Ltd. v. Angus Chem. Co.*, 43 F.Supp.2d 904, 910 (N.D.Ill.1999) (finding that "fair warning" requirement of due process cannot be satisfied by post-complaint activities).

45. *See* Pl. Opp. at 17.

46. *See Helicopteros Nacionales de Colombia*, 466 U.S. at 416–17, 104 S.Ct. 1868 (finding that a visit to the forum state by CEO and training visits of employees of foreign corporation were insufficient to subject foreign defendant to personal jurisdiction in forum state).

47. *See* Delivery List, Ex. 12 to Rice Dec.

48. *See Kuenzle*, 102 F.3d at 457 (finding insufficient contacts in part because, "[a]lthough [defendant's] products apparently command-

all delivered to Colorado customers, these contacts would not constitute the "continuous and systematic" activities necessary to subject a foreign corporation to general jurisdiction in the forum state.[49] Similarly, the single contact alleged between defendant WBB and the forum state, the sale of $52,000 worth of goods to a Colorado corporation over a four-month period, hardly rises to the level of "continuous and systematic" activities.[50]

### 2. Jurisdiction Based on Subsidiary's Presence in Colorado

Having found that defendants' direct contacts with Colorado are insufficient to establish personal jurisdiction, I now consider whether this Court may exercise jurisdiction over defendants based on the activities of Binder subsidiary PSI. PSI is undisputedly "present" in Colorado and is subject to the personal jurisdiction of Colorado courts.[51] Plaintiffs argue that PSI is defendants' agent and that defendants exercised sufficient control over PSI such that the Court may base jurisdiction over defendants on PSI's presence in Colorado.

In assessing whether a foreign parent corporation is subject to personal jurisdiction in Colorado, "[t]he acts of a subsidiary may be imputed to the parent" where the subsidiary is "so organized and controlled, and its business conducted in such a manner, as to make it merely an agency, instrumentality, adjunct, or alter ego of [the parent]."[52] Thus, "[j]urisdiction may be found in Colorado where a foreign parent maintains a subsidiary in a forum state and the subsidiary either 1) acts as an agent for the parent . . . or 2) exists as an alter ego of the parent."[53]

A court may exercise personal jurisdiction under an agency theory "when [the subsidiary's] activities as an agent are of such a character as to amount to doing business of the parent."[54] In making this inquiry, courts have considered whether defendants "exert some control over the day to day activities" of the subsidiary and the extent to which defendants and the subsidiary are "otherwise entangled."[55] Under an alter ego theory, a court may disregard the corporate entity and impute the acts of the subsidiary to the parent if "the parent used the corporate entity to perpetuate a fraud or wrong on another."[56] Nevertheless, even a wholly owned subsidiary is presumed to be a separate

---

ed a substantial share of the regional and national markets, there is no such evidence specific to [the forum state]").

**49.** See Fidelity & Cas. Co. v. Philadelphia Resins Corp., 766 F.2d 440, 443 (10th Cir.1985) (finding that small number of sales to customers in forum state were insufficient to establish general jurisdiction over nonresident corporation).

**50.** See id.

**51.** See 6/29/04 Memorandum of Law in Support of Defendants' Motion to Dismiss ("Def. Mem.") at 7 (acknowledging that PSI is "a Denver, Colorado-based manufacturer").

**52.** Colcord, 1985 WL 17481, at *3. See also Quarles v. Fuqua Indus., Inc., 504 F.2d 1358,

1362 (10th Cir.1974) ("Under [the alter ego] doctrine, the corporate entity is disregarded and liability fastened on an individual who uses the corporation merely as an instrumentality to conduct his own personal business.").

**53.** In re Ski Train Fire, 257 F.Supp.2d at 735 n. 29 (citing Behagen, 744 F.2d at 733; Quarles, 504 F.2d at 1364).

**54.** SGI Air Holdings II LLC v. Novartis Int'l AG, 239 F.Supp.2d 1161, 1165 (D.Colo.2003).

**55.** Id. (quoting SGI Air Holdings II LLC v. Novartis Int'l AG, 192 F.Supp.2d 1195, 1204 (D.Colo.2002)).

**56.** FDIC v. First Interstate Bank, 937 F.Supp. 1461, 1466–67 (D.Colo.1996) (quoting Skidmore, Owings, & Merrill v. Canada Life Assur-

entity in the absence of "clear evidence" that it is controlled by the parent.[57]

"Because both agency and alter ego theories often depend on the same type of evidence regarding day to day control or entanglement,"[58] the question is whether plaintiffs offer evidence of sufficient control over PSI by any of the Waagner defendants such that PSI's forum activities should be imputed to defendants for purposes of establishing jurisdiction. Because I conclude that they do not, I need not consider whether the alleged contacts among the Waagner defendants are sufficient to establish that they operate as alter egos of each other.[59]

■ In support of their claim that defendants controlled PSI, plaintiffs assert that the WBH Executive Board converted PSI into a distribution base for Binder and eliminated most of PSI's employees.[60] Although a decision by the parent to change the type of business in which the subsidiary engages may be an example of the

degree of control sufficient to subject the parent to jurisdiction, plaintiffs do not allege that any part of this restructuring occurred during the relevant time period for establishing jurisdiction.[61] The relevant time period for assessing whether the subsidiary is defendants' agent or alter ego is the time the complaint is filed—in this case, June 27, 2001.[62] Furthermore, plaintiffs offer no evidence that the decision to restructure was made by the WBH board or caused by defendants' alleged dominance and control over PSI rather than an independent decision in PSI's own interest.[63]

As further evidence of defendants' control over PSI, plaintiffs offer the following assertions. Information on Binder's website and in defendants' annual reports states that Binder's acquisition of PSI has improved Binder's long-term market position in the United States and that the PSI line of products "perfectly completes the Binder + Co product range."[64] Brochures and product information for both PSI and Binder can be obtained from both websites.[65] WBH

---

ance Co., 706 F.Supp. 758, 761 (D.Colo.1989), aff'd, 907 F.2d 1026 (10th Cir.1990)).

**57.** Id. at 1466.

**58.** SGI Air Holdings II LLC, 239 F.Supp.2d at 1166.

**59.** Even if plaintiffs could establish the necessary level of control over PSI by any of the Waagner defendants, it is unlikely that they could establish jurisdiction over defendants through PSI based on an alter ego theory. Plaintiffs do not allege that their cause of action is related to any dealings with PSI. See id. at 1166 (stating that "the only difference" between the agency and alter ego theories is that, under an alter ego theory, a plaintiff must establish that the cause of action arises out of its dealings with the corporate subsidiary.). See also FDIC, 937 F.Supp. at 1466–67 ("[I]f it is shown that the parent corporation used the corporate entity to perpetuate a wrong or a fraud on another, equity will permit plaintiff to pierce the corporate veil.").

**60.** See Pl. Opp. at 21.

**61.** See 2001 WBH Annual Report, at 23, Ex. 5 to Rice Dec. ("[PSI] will be expanded into a distribution base for [Binder], and its own production output will be limited strictly to assembly work. The associated personnel measures were largely carried out in the last quarter of 2001.").

**62.** See Cameron v. Group Voyagers, Inc., 308 F.Supp.2d 1232, 1240 (D.Colo.2004) ("The pertinent time period for any acts of [an alleged agent] being attributed to [defendant] would have been the time the complaint was filed.") (citing United Phosphorus, 43 F.Supp.2d at 910 (finding that "fair warning" requirement of due process cannot be satisfied by post-complaint activities)).

**63.** In fact, the annual report on which plaintiffs rely indicates that the restructuring was undertaken to "ensure PSI's quick return to profitability." 2001 WBH Annual Report, Ex. 5 to Rice Dec.

**64.** Binder Worldwide, Ex. 7 to Rice Dec.

**65.** See Pl. Opp. at 24.

management refers to PSI in a 1998 annual report as "the packaging equipment unit."[66] Plaintiffs argue that this evidence indicates that the subsidiary is "a mere department" and is doing the business of defendants. Additionally, plaintiffs point to defendants' overlapping corporate directors,[67] consolidated financial statements,[68] and Binder's controlling ownership of PSI[69] as evidence of the defendants' control. Lastly, plaintiffs assert that a "pooling agreement," under which WBH guarantees the bank liabilities of its subsidiaries,[70] establishes that the parent has "assumed the risk" of PSI's business ventures.

Courts have held, however, that factors such as sole ownership, overlapping directors, consolidated financial statements, and reference to the subsidiary as a department are insufficient to establish the type of day-to-day control necessary to disregard corporate separateness.

> [Defendants'] ownership of all the stock of [subsidiary], its control over policy and large capital expenditures, the overlap of directors and the use of consolidated financial statements cannot be considered in any way inconsistent with the normal stockholder-corporation relationship. The fact that [defendant] considered its subsidiaries . . . to be units or divisions . . . cannot destroy the fact that each corporation, for the most part,

operated separately, and each enjoyed a separate corporate identity.[71]

Furthermore, "parent financing of the subsidiary will not make the subsidiary a mere instrumentality."[72] Plaintiffs have provided no evidence that PSI failed to comply with corporate formalities, make its own day-to-day operational decisions, or remain sufficiently capitalized. Thus, although plaintiffs have demonstrated some of the factors relevant to a determination that the corporate form should be disregarded,[73] plaintiffs have failed to establish the level of corporate control or entanglement necessary to subject the parent to personal jurisdiction. As in *Quarles*, defendants "probably had the opportunity to control [the subsidiary], [but] the exercise, not the opportunity to exercise, control is determinative."[74]

## III. CONCLUSION

For the foregoing reasons, the Waagner defendants' motion to dismiss for lack of personal jurisdiction is granted. The Clerk of the Court is directed to close the motion [docket # 8] and this case [No. 03 Civ. 6351].

SO ORDERED.

---

66. 1998 WBB Annual Report, at 25, Ex. 4 to Rice Dec.

67. *See* Pl. Opp. at 19. Plaintiffs assert that in the past ten years, twenty-three corporate officers served on two or more "Waagner boards" and fifteen served on four or more.

68. *See id.* at 25.

69. *See id.* at 24. Binder owns 98.3% of PSI. Plaintiffs also note that WBBB owns 100% of WBH, which in turn owns 100% of the former operation divisions of WBB. *See id.*

70. 2000 WBH Annual Report, at 52, Ex. 14 to Rice Dec.

71. *Colcord*, 1985 WL 17481, at *4 (citing *Quarles*, 504 F.2d at 1363).

72. *Quarles*, 504 F.2d at 1363.

73. *See Skidmore*, 907 F.2d at 1027.

74. *Quarles*, 504 F.2d at 1364.